[No. 5539.]
[No. 3215 C. A.]

HILL v. THE FRUITA MERCANTILE COMPANY.

1. **Alteration of Instruments—Materiality of Alteration—Effect.**

   A complaint in an action, aided by attachment, averred that
   the amount claimed did not exceed $2,000, and the affidavit for
   attachment showed on its face that the claim was for $414.18.
   Held, that an alteration of a statement in the affidavit that the
   claim was for a sum not exceeding "200 dollars" to "20 hundred,"
   was not ground for striking the affidavit and bond in attachment
   from the files, there being no competent proof to show that the
   alteration occurred after the affidavit was sworn to, and, further,
   the alteration being merely as to a jurisdictional fact, it was
   unnecessary in the affidavit.—P. 495.

2. **Attachment—For Purchase Price of Goods—No Time Fixed
   for Payment.**

   Where an offer by wire to purchase potatoes at a certain
   price, if shipped on a certain day, was accepted by the seller,
   and the potatoes were loaded and delivered to the common car-
   rier according to a requirement of the offer, the transaction was
   sufficient to sustain an attachment in an action for the purchase
   price on the ground that they were to be paid for on delivery,

since in the absence of a specific agreement as to the time of payment it was a cash transaction.—P. 496.

3. Sales—Terms of Sale in Absence of Agreement.

In the absence of a specific agreement concerning the terms of sale, goods sold are to be paid for in cash on delivery, and to change this presumption, the purchaser must establish an agreement for credit.—P. 496.

4. Sales—Delivery—Delivery to Carrier.

In the absence of any agreement to the contrary, delivery of goods by a seller to a carrier is delivery to the consignee.—P. 497.

5. Same—Carrier Selected by Seller.

Where a seller undertakes to deliver goods himself, at the buyer's place of business, and selects his own carrier, the carrier is usually regarded as the agent of the seller, who thus assumes the risk of carriage.—P. 497.

6. Sales—Delivery to Carrier—When Title Passes to Consignee.

An offer by wire to purchase potatoes at a certain price, if shipped on a certain day, was accepted by the seller, and the potatoes were delivered to the carrier on the day specified, a bill of lading received, and the purchaser notified at once of the shipment, together with a description of the car. Held, that the delivery of the potatoes to the carrier vested the title thereto in the consignee, and, for any default on the part of the company in delivering to him, a right of action arose in his favor, and not in favor of the consignor.—P. 497.

7. Sales—Refusal to Accept — Action for Price — Evidence — Admissibility.

In an action for the price of a carload of potatoes shipped to defendant, which he refused to accept because of the failure of the railroad to deliver as soon as he desired, evidence as to a custom that in such sales the buyer had the privilege at all times to inspect the potatoes before receiving them, and to reject them if they were not according to the contract, was not admissible.—P. 498.

*Appeal from the County Court of Mesa County.*
*Hon. Walter S. Sullivan, Judge.*

Action by The Fruita Mercantile Company against W. J. Hill. From a judgment for plaintiff, defendant appeals.          *Affirmed.*

Mr. JAMES J. McFEELEY, for appellant.

Messrs. CARNAHAN & VAN HOOREBEKE, for appellee.

This action was brought by the appellee November 4, 1903, in the county court of Mesa county, Colorado, to recover the purchase price of a carload of potatoes alleged to have been sold and delivered to appellant on August 20, 1903. At the time of the sale and the commencement of the action, appellant was living at Cripple Creek, Teller county, Colorado. Prior to the date of purchase the appellee telegraphed the appellant that it had choice potatoes for sale at a certain price per hundred pounds. On August 20, 1903, appellant telegraphed appellee as follows:

"*Dated*              Cripple Creek, Colo.

"*To*                 Fruita Merc. Co.,
                          "Fruita, Colo.

"Will pay one twenty-five if shipped to-day. Ans. quick.        W. J. HILL."

Upon receipt of this telegram appellee wired appellant as follows:

                                    "8-20-1903.

"W. J. Hill,
    "Cripple Creek.

"F. G. E. two two one to-day. Your bid.

                     "THE F. M. Co."

The letters "F. G. E." stand for the initials, and "two two one" is the number of the car in which the potatoes were shipped.

In pursuance of these telegrams the potatoes were loaded into a car of The Denver & Rio Grande Railroad Company at Fruita on the afternoon, between 1 and 6 o'clock, of the 20th of August, 1903, and the car delivered to the railroad company. The

following bill of lading was delivered by the company to the appellee:

## "SHIPPING RECEIPT.

*The Denver & Rio Grande Railroad Company.*

| Consignor Marks and Destination. | Articles. | Weight (subject to correction). |
|---|---|---|
| W. J. Hill, Cripple Creek, Colorado. Via D. & R. G. Cr. & C. S. D. | Std. Potatoes O. R. S. L. & C. T. E. E. 18220 | 20,000 A. A. BETTS, Agent." |

The Denver & Rio Grande Railroad was the only railroad over which the potatoes could be shipped from Fruita. A charge for the potatoes was made on the books of the appellee on August 20, and a bill for the same mailed to him at Cripple Creek. On August 24, 1903, the potatoes not having arrived at Cripple Creek, the appellant wired the appellee that he would not receive them, and on September 20, 1903, he wrote the appellee the following letter:

"Cripple Creek, Colo., 9-20-1903.

"Fruita Mer. Co.,

"Fruita, Colo.

"Gentlemen—Your letter to hand. My reason for not accepting the car of potatoes was the delay by the R. R. Co. of getting them in here. I place no blame upon you people. The R. R. Co. is to blame entirely. I did not ask them the cause of the delay. They are responsible for my not taking the car of potatoes. I wired your house the day before they reached this district that I could not accept them on account of the delay.        Yours truly,

"(Signed)        W. J. HILL."

The appellee received notice from the railroad company that it had delivered the carload of potatoes to Mr. A. K. Barwise, of Cripple Creek, and that it had received from him about one-half of the price charged for the potatoes. There is no evidence as to the disposition of this money by the company. On December 26, 1904, an affidavit in attachment was filed, and a writ of attachment issued. Appellant traversed the affidavit and, after hearing, the court sustained the writ. Thereafter appellant filed a motion to strike the affidavit and bond in attachment from the files, which motion was denied. The cause was tried to the court, and judgment rendered in favor of appellee against the appellant for $446.95 and costs.

From this judgment and the judgment sustaining the attachment, this appeal is prosecuted.

Mr. JUSTICE GODDARD delivered the opinion of the court:

1. Counsel for appellant contends that the court erred in denying his motion to strike the affidavit and bond in attachment from the files, for the reason that after the affidavit was sworn to and before the hearing on the motion, it had been altered. The alteration consisted in this: The affidavit, as originally drawn, contained the statement that the appellant was indebted to the appellee in a sum of money "not exceeding 200 dollars," and that it now reads, "20 hundred"; in other words, that one of the ciphers has been erased.

This contention is without merit, for several reasons: (1) There was no competent proof to show that the alteration occurred after the affidavit was sworn to; (2) The alteration was of an unnecessary, immaterial statement in the affidavit, to wit, that of a jurisdictional fact.

The complaint averred that the amount claimed did not exceed $2,000. This was sufficient. The statement need not be repeated in the affidavit. Furthermore, the affidavit, even on its face, shows that the claim was for $414.18, which would satisfy the statute if it was necessary for the affidavit to contain such an allegation.—*Barndollar v. Patton,* 5 Colo. 46; *Hughes v. Brewer,* 7 Colo. 583.

The further claim that the evidence introduced upon the hearing of the traverse was insufficient to sustain the ground of attachment, to wit, that the action was for the purchase price of goods that were to be paid upon delivery, is clearly untenable.

As appears from the above statement, the appellant bought these potatoes at $1.25 per hundred, if shipped on the 20th of August. The offer was accepted, the potatoes were loaded and delivered to the common carrier according to this requirement. No time being fixed for payment, on its face it was a cash transaction, and the potatoes were to be paid for on delivery.

It is well settled that, in the absence of a specific agreement concerning the terms of sale, goods sold are to be paid for in cash on delivery. To change this presumption, the defendant must establish an agreement for credit.—*Dolan v. Paradice,* 4 Colo. App. 314; *Metz v. Albrecht,* 52 Ill. 491; *Elder v. Hood,* 38 Ill. 533; *Dwyer v. Duquid,* 70 Ill. 307.

It follows, therefore, that there being no time fixed for payment, the purchase price was due when the potatoes were delivered. The attachment, therefore, was properly sustained, if the delivery to the common carrier on the day fixed by the contract was a delivery to appellant. The controlling question on this issue, as well as on the merits of the case, is, was the delivery of the potatoes to the common carrier a delivery to appellant?

The rule is well settled that, in the absence of any agreement to the contrary, delivery to the carrier is delivery to the consignee.—Elliott on Railroads, Vol. 4, § 414, and cases cited in note 60.

And the converse of this rule is that, where the seller undertakes to deliver the goods himself at the buyer's place of business and selects his own carrier, the carrier is usually regarded as the agent of the seller, who thus assumes the risk of carriage.—*Ibid.*

In Angell on Carriers, at § 497, it is said:

"But by the delivery of the goods to a carrier *on behalf* of the consignee, and if they have been placed at his *absolute disposal,* and no other fact appears, the legal presumption is, that he is the true owner, and the property in the goods then becomes immediately vested in him; and, therefore, in the event of a loss, he, and not the consignor, must bring the action, for the consignor has his remedy against the purchaser."

As appears from the statement of facts, the potatoes were sold to appellant on a telegram August 20, 1903, to be shipped that day. Appellee loaded them, and obtained bill of lading from the common carrier on that day, and notified appellant at once that the potatoes had been shipped, giving him the description of the car.

From these undisputed facts, we think the case clearly comes within the general rule above stated, and that the delivery of the potatoes to the railroad company vested the title thereto in the appellant, and for any default on the part of the company in delivering the goods to him, a right of action arose in his favor, and not in favor of the appellee.

2. The complaint avers that the appellee is and was a corporation. The answer of appellant was insufficient to put this allegation in issue.

3. The error assigned upon the refusal of the court to permit the witness Silcox to testify that it was the custom in cases similar to this that the buyer had the privilege at all times to inspect the carload of potatoes before receiving them, and to reject them if they were not according to contract, is without merit, for the reason that the appellant did not base his objection to receive the potatoes upon this ground, but based it wholly on the ground of the failure of the railroad company to deliver them at as early a date as he expected, as evidenced by his letter of September 20, wherein he assigns this reason for not accepting the car of potatoes, and exonerates the appellee from all blame in the matter.

Without noting in detail the other objections, suffice it to say that, upon a careful inspection of the record, we are satisfied that the court, in the trial of the cause, committed no error prejudicial to the rights of the appellant, and that, upon the undisputed facts, its conclusion as to the law was correct.

Its judgment is, therefore, affirmed. *Affirmed.*

Chief Justice Steele and Mr. Justice Bailey concur.