MASONER *et al.* v. BELL.

No. 462, Ind. T.   Opinion Filed April 13, 1908.   .

(95 Pac. 239.)

1.    APPEAL—Review—Bill of Exceptions—Failure to Preserve.
Where a motion to require plaintiff to make his complaint more
definite and certain is not preserved in the bill of exceptions,
this court cannot review the action of the trial court in passing
upon such motion.

2.    SALES—Passing Title—Delivery—Payment. Where there is a
sale of goods to be paid for in cash on delivery, payment and
delivery are concurrent acts.   In such case payment is a con-
dition precedent to passing title to the vendee, and if on delivery
of the goods payment is refused, and the same are appropriated
by him to his own use, an action against him for the value will
lie by the vendor.

(Syllabus by the Court.)

*Error from the United States Court in the Indian Territory,
Southern District at Pauls Valley; before Hosea
Townsend, Judge.*

Action in conversion by Lizzie Bell against John Masoner and
others.   Judgment for plaintiff, and defendants bring error
Affirmed.

On December 1, 1899, defendant in error, Lizzie Bell, here-
after called plaintiff, brought suit before the United States Com-
missioner at Pauls Valley against plaintiffs in error John Masoner
and Sam Garvin, hereafter called defendants, and recovered judg-
ment against them in conversion for one bale of cotton in the sum
of $34.25.   They appealed, and on March 26, 1902, on trial anew
in the United States Court in the Indian Territory, Southern
District, at the same place, plaintiff again recovered judgment
for $39.55 and costs. On March 29, 1902, defendants filed a mo-
tion for a new trial, which was overruled by the court and excep-

tions duly noted, and on May 27, 1902, filed their bill of exceptions and prosecuted a writ of error to the United States Court of Appeals in the Indian Territory, and the case is now before us as successor of that court.

To maintain the issues on her part plaintiff introduced in evidence a chattel mortgage made by defendant Masoner to her on April 26, 1899, on "my entire crop of corn and cotton on the Jones farm," to secure a promissory note of that date for $78.23, due from him to her October 15, 1899, with interest at 10 per cent. per annum from date, also introduced in evidence and proved to be unpaid. She also proved that after one bale of the cotton covered by the mortgage had been baled her husband, as her agent, and Masoner, the mortgagor, went to the gin where it was, and while there mutually agreed that Mr. Goss, who was in charge of the gin, should send the bale to Pauls Valley and sell it and bring the money back for plaintiff, who was to apply it to the mortgage debt; that pursuant to this understanding Goss, about October 7, 1899, acting through S. H. Long, turned the bale over to him with instructions to take it to Pauls Valley, "sell it, and bring the money back to him." Long took the cotton, together with another bale, conveyed them to Pauls Valley, sold them to defendant Garvin, and testified:

" * * * I was fixing to put the money in my pocketbook, and when I reached over for the other money for the other bale Mr. Lowe was sitting there and Mr. Garvin was sitting to his left a little. Mr. Lowe turned round and said to Mr. Garvin: 'Don't John Masoner owe us something here?' Mr. Garvin says: 'Yes; Just keep that.' And then Mr. Lowe reached over and got it, and I told them at the time I didn't want to get into any trouble over this cotton business, and Mr. Garvin spoke up and says, 'I will see that you get in no trouble,' and wrote a little note for me to carry back to Mr. Goss, and I carried it back to him."

The note is as follows:

"S. J. Garvin, General Merchandise Cotton and Grain Buyer. Pauls Valley, Ind. T., Oct. 7, 1899. Received of S. H. Long thirty-four and 25-100 dollars, on account of John Masoner, be-

ing the proceeds of one bale of cotton, No. 495—6.92½. S. J. Garvin, by L."

Garvin paid nothing for the cotton. The bale weighed 495 pounds, and was worth 6.92½, in all $34.25. Shortly thereafter the witness Howard went to Garvin with the brands of the cotton, and told him plaintiff had a mortgage on it, and made demand of it for plaintiff, and threatened suit if the same was not returned. Garvin told him to sue. Witness hunted for the bale in Garvin's cotton yard, but could not find it. The husband of plaintiff, still acting as her agent, "phoned" Garvin that his wife had a mortgage on the cotton, but did not get any satisfaction about it. He then saw Garvin about it, who told him he would not pay for the cotton, and that plaintiff would have to sue for it if she got anything. He also went to the cotton yard, but could not find the cotton.

These are undisputed facts in the case, which went to the jury on evidence adduced by plaintiff alone, and the instructions of the court.

*W. A. Ledbetter, S. T. Bledsoe,* and *J. B. Thompson,* for plaintiffs in error.

*Johnson & Rennie,* for defendant in error.

TURNER, J. (after stating the facts as above). The first assignment of error herein is that the court erred in overruling the motion of the defendants to require plaintiff to make her complaint more definite and certain; but as the motion is not brought into the record by being set forth in the bill of exceptions, or its overruling assigned as error in the motion for a new trial, we cannot consider it. 3 Enc. Pl. & Pr. 392 ,and cases cited; *Fisher v. United States,* 1 Okla. 252, 31 Pac. 195; *Swope v. Smith,* 1 Okla. 283, 33 Pac. 504; *Lake Erie R. R. Co. v. Clark,* 7 Ind. App. 155, 34 N. E. 587, 52 Am. St. Rep. 442.

The next assignment of error is that the court erred in refusing to instruct the jury as follows:

"The court erred in refusing to instruct the jury, at the re-

quest of the defendants: 'We want to request the court to instruct the jury that, if they should find that the plaintiff in this action had authorized the sale of the cotton—Goss, I believe, is the party's name—had authorized Goss to make a sale of the property, and Goss, in pursuance of that authority, had sent the cotton down here to be sold, and the same was sold to Sam Garvin, the fact that the money was not surrendered in accordance with any agreement had with the plaintiff in the case would not relieve her from her consent given to the sale. And her consent would entitle the defendants to a verdict in the case.' "

This instruction, in effect, would have told the jury that the consent of the plaintiff to the sale was the only thing necessary to pass the title of this property to Garvin under the circumstances, and that it did not matter whether he paid for it or not; that this action would not lie. In support of this contention they cite abundance of authority to show that: "In an action for conversion by the mortgagee of the mortgaged chattel the defendant may show that he bought it from the mortgagor, and that the mortgagee assented by parole to the sale." (Jones on Chattel Mortgages (4th Ed.) § 465; Cobbey on Chattel Mortgages, § 637; *New England Mortgage Security Co. v. Great Western Elevator Co.,* 6 N. D. 407, 71 N. W. 130; *Benedict v. Farlow,* 1 Ind. App. 160, 27 N. E. 307.)

This proposition of law is undoubtedly sound where there has been a sale, but the undisputed facts in this case show that there was no sale. Long, the agent of both the mortgagor and the mortgagee, was certainly authorized to make a sale of this bale of cotton, but he was only authorized to make a cash sale. And in his own language he was only authorized to "sell it and bring the money back to him [Goss]." The fact that the purchase money was set apart by Garvin, and afterwards, and before Long could accept it, was withdrawn, shows conclusively that such only was intended when the cotton was delivered to Garvin. The question of law then arises, does the title to property sold and delivered for cash pass to the purchaser until the cash is paid? We think not.

In *Frazier v. Railroad*, 104 Mo. App. 359, 78 S. W. 679, the court said:

"It is a legal principle generally recognized that when no express provision is made for time of payment, a sale of personalty is presumed by law to be a cash transaction, and the delivery of the property and the payment of the purchase price are concurrent, and the buyer is not entitled to demand nor to receive delivery or possession of the goods, the subject of the contract, without proffer of the purchase price, or its actual payment. In the absence of other arrangement, express or implied, concerning the time of payment of the price and providing for future payment, or where the parties remain entirely silent respecting it, the rule is clearly established that the sale is made impliedly for cash, and title to the property does not pass to the vendee until payment or tender of payment has been made. The payment of the purchase price becomes a condition precedent by legal implication, and, except in the event of waiver by the vendor, title does not vest in the buyer until after performance of such condition. Those principles are upheld and asserted by an unbroken line of decisions of the appellate courts of this state, as well as by the treatises of the most eminent writers upon the subject. Tiedeman, Sales, § 93; 1 Benjamin, Sales (4th Ed.) 318, 345; *Southwestern, etc., Co. v. Stanard*, 44 Mo. 71, 100 Am. Dec. 255; *Hall et al. v. Railroad*, 50 Mo. App. 179; *Stresovich v. Kesling*, 63 Mo. App. 57."

In *Hilmer v. Hills*, 138 Cal. 139, 70 Pac. 1081, the court said:

"If Stewart had intended that the sale should be on credit, he would have given his clerk directions to inclose the bill of lading with the invoice to plaintiff. But one conclusion can be drawn from this act in instructing that the bill be withheld to accompany the draft. 'Terms cash' was distinctly stated in the body of the invoice forwarded by Stewart, and there can be no question that Stewart intended to make the sale one of 'cash on delivery.' Such being the clear intention of the parties to the transaction, it is plain, as a matter of law, that no title in the goods could pass to plaintiff until they had paid the 'cash' for the goods. This was a 'cash' sale, as distinguished from a sale on credit, and that the title to the goods as well as the right of possession remained in Stewart until the cash should be paid is settled law, as will clearly be illustrated by an examination of

the following citations: *Sanborn v. Shipherd*, 59 Minn. 144, 60 N. W. 1089; *Blackwood v. Cutting Packing Co.*, 76 Cal. 215, 18 Pac. 248, 9 Am. St. Rep. 199; *Ramish v. Kirschbraun*, 107 Cal. 660, 40 Pac. 1045."

In *Drake v. Scott*, 136 Ala. 261, 33 South. 874, 96 Am. St. Rep. 25, the court say:

" 'Where there is a sale of goods to be paid for in cash on delivery, payment and delivery are concurrent acts. In such case payment is a condition precedent to passing title to the vendee. If delivery is made without demanding payment, or under circumstances showing no expectation of immediate payment, the condition is waived, and the title passes; but if the goods are put into the possession of the buyer, on the understanding or agreement that he will pay for them immediately, and he fails or refuses to do so, the seller may recover the goods.' *Shines v. Steiner*, 76 Ala. 458; *Harmon v. Goetter*, 87 Ala. 325, 6 South. 93; Benjamin on Sales (6th Ed.) §§ 1, 320, and note 4, p. 298." 

It follows that as there was no sale of the property in controversy to Garvin, and that he refused to surrender the same to plaintiff on demand, but converted it to his own use, that this action would lie; and that the court did not err in refusing to give the requested instruction.

The fourth assignment of error is to a part of the charge wherein is recited facts about which there was no controversy and in which we see no error.

The fifth assignment of error is that the court erred in charging the jury as follows:

"The court will instruct you that if this was the property of the plaintiff in this case, that she had a mortgage upon this property, that Mr. Garvin and Mr. Masoner, or either of them, or both of them together, could not take the proceeds of the cotton that belonged to the plaintiff in this case."

Defendants contend that by this, in effect, the court instructed the jury to return a verdict in favor of the plaintiff. Admitting such to have been the force and effect of the charge, we do not think the court erred in so charging. The evidence was undis-

puted, and not conflicting. It clearly showed a conversion of the property on the part of Garvin; that while, as defendants contended affirmatively, there was waiver of lien on the part of the mortgagor and mortgagee on the property in controversy, yet there was no sale of it to Garvin, as they further contended. 6 Enc. Pl. & Pr. 686, says:

"Where there is no sufficient evidence of a fact essential to plaintiff's case, or the defendant's affirmative defense, a verdict should be directed"—citing authorities.

Hence the court did not err in so charging or refusing to instruct peremptorily for the defendant, according to their second assignment of error, and the judgment of the lower court must be affirmed, unless the judgment is contrary to the law or the evidence, as is next contended.

Upon this point we have no doubt as to Garvin, but the same might not have been said as to Masoner but for the fact that, after wrongfully receiving, without objection, the benefit of the credit for the cotton in question on the books of Garvin, he made common defense with him in this cause, and set up in his answer a waiver of lien on behalf of plaintiff, and seeks to defeat a recovery herein on the ground that the title to the property passed to Garvin by virtue of his alleged purchase. We are inclined to think the evidence in the case sufficient to show him a tort-feasor jointly liable in the case with Garvin. Cooley on Torts (3d Ed.) 244, says:

"All who aid, advise, command, or countenance the commission of a tort by another, or who approve of it after it is done, are liable, if done for their benefit, in the same manner as if they had done the act with their own hands. * * *"

The judgment of the lower court is affirmed.

All the Justices concur.