JONES v. MONCRIEF-COOK CO.

No. 289.   Opinion Filed March 8, 1910.

(108 Pac. 403.)

1.  LANDLORD AND TENANT—Lease—Waiver of Restrictions—Subletting. The lessor may waive a breach of the restriction against the assignment or subletting imposed by the terms of the lease, in which event the matter stands as if the lessor had given his consent to the assignment or underletting.

 (a) A clause in a lease restricting the right of the lessee to assign or sublet the premises is for the benefit of the lessor, and can be set up alone by him.

 (b) The lessor, M., having entered into the lease with the restriction against assignment or subletting as to the lessees, M.-C. Co., and the same having been assigned and the lessor not having elected to forfeit same, but by his conduct and act recognizing said lease as valid, such restriction will be deemed as having been waived.

2.  CONTRACTS—Options—Delay in Accepting. Courts will view any delay with great strictness where the party seeking to enforce the performance of a contract was not bound; the other party thereto being bound.

3. **LANDLORD AND TENANT—Option to Purchase — Waiver of Right.** M. having stipulated with M.-C. Co. that at any time during the term of a lease and prior to its termination, if any offer was made during such period by any proposed purchaser for the demised premises that M. C. Co. should have the preference to purchase at said price in the event M. desired to sell at such offer, M. C. Co. being notified by M. of the offer, answer not accepting, but making a counter proposition, held, that that amounted to a rejection or waiver of the privilege to purchase under such option.

4. **VENDOR AND PURCHASER—Contract—Terms of Payment— Presumptions.** It is a general rule that, when no express provision is made in a contract of sale or purchase for time to pay the purchase price, the same is presumed to be a cash transaction.

(Syllabus by the Court.)

*Error from District Court, Comanche County; F. E. Gillette, Judge.*

Action by the Moncrief-Cook Company against Mattie Jones. Judgment for plaintiff, and defendant brings error. Reversed with instructions to dismiss.

*J. L. Hamon* and *Charles Mitschrich,* for plaintiff in error.— On question of acceptance of options: 24 A. & E. Enc. L., pp. 1031 and 1032; *Railway Co. v. Nully,* 62 Me. 148; *Bruce v. Bishop,* 43 Vt. 161; *Ortman v. Weam,* 11 Fed. 358; *Bruner v. Wheaton,* 46 Mo. 363; *Stagg v. Compton,* 81 Ind. 171; *Clay v. Ricketts* (Iowa) 23 N. W. 755; *Plant Seed Co. v. Hall,* 14 Kan. 553; *Falls Wire Mfg. Co. v. Brodewick,* 12 Mo. App. 378; *Congas v. Rumsey Mfg. Co.,* 37 Mo. App. 297; *Maclier's Adm'rs v. Frith* (N. Y.) 21 Am. Dec. 262; *Egger v. Nesbitt* (Mo.) 43 Am. St. Rep. 596; *Heiland v. Ertel* (Kan.) 44 Pac. 1005; Clark on Contracts (2d Ed.) pp. 28, 30 and 34; *McClay v. Harvey* (Ill.) 32 Am. Rep. 35; *Railway Co. v. Columbus, etc., Co.,* 119 U. S. 149; *Goulding v. Hammond,* 54 Fed. 639; *Harding v. Gibbs* (Ill.) 8 Am. St. Rep. 345.

*Stevens & Hayes,* for defendants in error.—On waiver of restrictions in lease by lessor: 24 Cyc. 970; *Sexton v. Chicago Storage Co.* (Ill.) 21 N. E. 922; *Garcia v. Gunn* (Cal.) 51 Pac. 684; *Bell v. Wright* (Kan.) 1 Pac. 595; *Cradle v. Warner* (Ill.) 29 N. E. 1118.

WILLIAMS, J. This was a suit to enforce the specific performance of a contract in relation to real estate commenced by Moncrief-Cook & Co., plaintiff below, against W. K. Melton and Mattie Jones, defendants below. Melton was never served with summons and never appeared in this cause, and the suit was prosecuted against Mattie Jones the same as if Melton had not been made a party defendant. It appears from the pleadings and the evidence that William K. Melton was the owner of lot 30 block 40 of the city of Lawton; that on the 19th day of January, 1905, he made a lease and contract concerning said lot to Moncrief-Cook & Co., a copartnership, which lease and contract were in words and figures as follows:

"This agreement made this 19th day of January, 1905, by and between W. K. Melton, of Cass county, Texas, party of the first part, and Moncrief-Cook & Co., of Lawton, Comanche county, O. T., parties of the second part, witnesseth: That, for and in consideration of the sum of $180.00, the receipt for the payment of $90.00 in cash and a note for $90.00 due Sept. 1, 1905, is hereby acknowledged, the party of the first part leases to the second parties his lot known as lot 30, in block 40 in the original town of Lawton, Comanche county, O. T., for the term of one year, from Feby. 15, 1905, to Feby. 15, 1906, with the privilege of using said lot for one or more years thereafter at the same terms providing said lot is not sold. As a further consideration of the above agreement, the party of the first part hereby guarantees to the second parties the privilege of purchasing the above lot at any time before the termination of this lease at the price offered by any other purchaser. It is also agreed by the first party that, in the event that he should sell said lot and demand possession, he will pay said second parties the sum of three hundred dollars for their building situated on the above said lot, unless said second parties arrange for the disposal of the said building to other parties. It is further agreed by the second parties that in consideration of the above agreements, in the event that they shall neglect or refuse to pay the above note or to otherwise comply with this contract, then the said first party may enter upon and take possession of his said lot, together with the above mentioned building, it being understood that any fire safe or fire proof vaults are not to be considered as any part of above said building. The second parties also

agree not to use said lot in such a manner or for such purposes as will damage or in any way depreciate the value of the said lot. Signed and witnessed by second party the day and date above set forth."

This lease was not acknowledged, but was filed for record in the office of the register of deeds of Comanche county. Melton, the owner, lived at Atlanta or Bivins, Tex. After the lease was executed, Moncrief-Cook Company put a building thereon, 24 by 60 feet. On the 5th day of November, 1905, in response to an advertisement inserted in a local paper, advertising such lot for sale, D. D. Lindsley, a real estate agent at Lawton, wrote the owner, asking the price, and received a letter asking $3,000. On the 9th day of November, 1905, he received another letter to the effect that the lease to the parties on the lot expired on the 15th day of February, 1906, that the building he bought belonged to them, and that the owner had no interest in the stone wall on the west. On the 15th day of November, 1905, Lindsley sold the lot to the defendant Mattie Jones, and on the same day wired the owner:

"Have sold lot 30 block 40 thirty-one hundred net you thirty hundred, one thousand cash, thousand one year, one thousand two years, lot to be clear and possession Feby. 16th, 1906, terms satisfactory, wire me."

On the 16th day of November, 1905, after receiving the Lindsley telegram, the owner telegraphed Moncrief-Cook Company:

"I am offered $3100 for lot 30. Answer."

On the same day he telegraphed Lindsley:

"Accept per Moncrief-Cook contract notes draw 10 per cent. sent papers First National, Atlanta, Texas."

On the same day Lindsley wired Melton:

"We accept, subject contract, papers to follow by mail."

On the 16th day of November, 1905, Moncrief-Cook Company, in answer to the telegram of the owner, wrote him a letter as follows:

"We have your telegram and note that you have an offer of $3,100.00 for lot. We are rather surprised at such a price that is offered for such property here, but of course we may be able to make some arrangements with you for the purchase of the lot.

One of my partners will be here the last of this week or the first of next, and if you will let us know by return mail your best terms for payment, we will take the matter up, at that time. Of course, a $3,100.00 offer under the circumstances would mean $2,800.00 to you, as according to terms of the lease, in case of sale to any one else, providing we do not take it at his price, you are to pay us $300.00 for the building. This will leave you $2,800.00 net. Doubtless you are to pay some commission too. Kindly advise us if you could take something like $500.00 or $800.00 down, the balance in 3 installments of one, two and three years each. If you could make us a good proposition, we might be able to handle the deal for you. As said above we will take the matter up with our partners, by which time we hope to again hear from you."

On the 17th day of November, 1905, the owner and wife executed warranty deed to the defendant Jones, and on the next day caused the same to be sent by the First National Bank of Atlanta, Tex., to the First National Bank of Lawton, Okla., to deliver to Jones on the payment of the price. On the 20th day of November 1905, the defendant Jones paid the purchase price, and on the same day the deed was delivered to her, and on the same day it was filed for record in the office of the register of deeds of Comanche county. On the 21st day of November, 1905, Moncrief-Cook Company wired the owner:

"We will pay you thirty-one hundred dollars for lot thirty block forty, Lawton. Place deed in your bank and wire us, money ready."

There was an allegation to the effect that the defendant had acquired her title to the land with full notice and knowledge of the contract between the owner and Moncrief-Cook & Co. and the prayer for a decree compelling the specific performance thereof. There was judgment for plaintiff, for the reversal of which this proceeding in error was commenced.

From an examination of the brief of counsel for plaintiff in error we gather that the principal grounds upon which they hope to reverse the judgment of the court below are: (1) That under section 3330, Wilson's Rev. & Ann. St. Okla. 1903, which provides that "no tenant for a term not exceeding two years, or at

will, or by sufferance, shall assign or transfer his term of interest. or any part thereof, to another, without the written assent of the landlord or person holding under him," it is clear that the firm of Moncrief-Cook & Co., a copartnership, the original lessees, having virtually retired from business on the 13th day of November, 1905, and transferred the possession and all the rights of said copartnership and the lease contract herein to Moncrief-Cook Company, a corporation, without the written consent of the landlord, the lease became forfeited and the corporation acquired no rights thereunder; (2) that the letter of Moncrief-Cook Company amounted to a refusal to purchase at the price offered by another and absolved the owner from further liability under the contract; (3) that the defendant Jones had no notice of the contract between the owner and Moncrief-Cook Company; (4) that, Lindsley having received $4,500 from Mattie Jones for the property, it would be inequitable to decree the conveyance by Mattie Jones to Moncrief-Cook Company on payment of $3,100; (5) that, the Moncrief-Cook Company being a tenant, it cannot litigate the question of title with the landlord without first surrendering possession of the leased premises.

Upon the question of possession, section 3331, Wilson's Rev. & Ann. St. Okla. 1903, provides:

"If any tenant shall violate the provisions of the preceding section, the landlord, or person holding under him, after giving ten days' notice to quit possession, shall have a right to re-enter the premises and take possession thereof, and dispossess the tenant, subtenant or under tenant."

In the case at bar it does not appear that the lessor attempted to terminate the lease. On the contrary, it appears that the owner wished to observe the terms of the contract, and wired him to also observe it. So, unless the option was rejected or waived, it seems not to have been forfeited by such assignment; the lessor not having elected to declare the forfeiture. This he had a right to do.

"The lessor may waive a breach of the restriction against assignment or subletting whether imposed by statute or by the terms of the lease, in which event the case stands as if no restriction

had been imposed, or as if the lessor had given his consent to the assignment or underletting." (24 Cyc. p. 970.)

The Supreme Court of Illinois in the case of *Sexton v. Chicago Storage Company,* 129 Ill. 318, 21 N. E. 920, 16 Am. St. Rep. 274, in an opinion by Mr. Justice Schofield, held that:

"The objection that the written assent of appellant was not obtained the assignment cannot be urged by appellees. The clause in the leases in that respect is for the benefit of, and can be set up by, appellant alone. He may waive it if he will; and, if he does not choose to set it up, none else can."

The same court in *Gradle v. Warner,* 140 Ill. 123, 29 N. E. 1118, held:

"The privilege to purchase was not lost because of failure of the lessee to pay his rent, in the absence of any individual act indicating an intention to forfeit the lease, and that the sending by the lessor to the lessee of a letter stating that the balance of the rent must be paid at a certain date, and asking as to the lessee's desire to continue was not such an act."

As to the second proposition, a construction of the following clause of the contract is necessary, to wit:

"As a further consideration of the above agreement, the party of the first part hereby guarantees to the second parties the privilege of purchasing the above lot at any time before the termination of this lease at the price offered by any other purchaser."

The defendants in error seem to contend that this clause gave them the absolute right to purchase said lot at any time before the termination of the lease which began on the 15th day of February. 1905, to expire on the 15th day of February, 1906, at the price offered by any other purchaser. Does said clause mean that the party of the first part intends to bind himself to sell said lot to the parties of the second part at any time up to the close of the period of said lease term at such price as may be offered by any other proposed purchaser? That would mean, in effect, that party of the first part by said clause contracted to sell said lot at any time during said lease term up to the time of its termination at the option of said lessees or parties of the second part at a sum certain to be determined by the highest price offered by any proposed purchaser in the event that such offer was made. Sup-

pose no offer was made by any proposed purchaser, what would be the result then? When said clause is construed with the remaining clauses of said contract, it is evident that the parties therein intended that at any time during the term of said lease and prior to its termination, if any offer was made by any proposed purchaser to purchase the same at a sum certain, that the defendant in error should have the privilege of the preference in the event the party of the first part desired to sell said lot at such offer. In other words, that, if any offer to purchase said lot was made by any proposed purchaser at any time during the period of said lease and before its termination, he desiring to accept same, Moncrief-Cook Company should have notice from the said lessor of such offer, and within a reasonable time thereafter they must accept the same under the terms of such offer by the proposed purchaser, or the same would be considered as rejected, and the lessor, being released from such option, would be permitted to sell the lot to such party making the offer. As to the question of notice of the proposed offer, see *Austin v. Tawney*, 2 Chan. App. Cas. (Law Reports, 30, 31,Victoriae 1867) 143; *Lord Lilford v. Powes Keck*, 30 Beav. 295, 54 Eng. Rep. Full Reprint, 902; 21 Amer. & Eng. Enc. of Law (2d Ed.) p. 932, footnote 4. As to the acceptance within a reasonable time after such notice, see 21 Amer. & Eng. Enc. of L. (2d Ed.) p. 933, and authorities cited under footnote 4.

It is uncontroverted that the offer of purchase by the proposed purchaser was made to the lessor, and that notice of such offer was communicated by the lessor to the lessees. Did the defendants in error within a reasonable time elect to avail themselves of the privilege of purchasing said lot, after the notice of the offer for same prior to the termination of the lease at the price offered by the party proposing to purchase? It seems to us that the answer amounted to a refusal to purchase at the price offered, to wit, $3,100. How can it be construed as an intention to accept in the face of the statement:

"We are rather surprised at such a price that is offered for such property here, but of course we may be able to make some arrangements with you for the purchase of the lot. One of my

partners will be here the last of this week or the first of next, and if you will let us know by return mail your best terms for payment, we will take the matter up, at that time. Of course a $3,-100.00 offer under the circumstances would mean $2,800.00 to you, as according to the terms of the lease, in case of sale to any one else, providing we do not take it at his price, you are to pay us $300.00 for the building. This will leave you $2,800.00 net. Doubtless you are to pay some commission too. Kindly advise us if you could take something like $500.00 or $800.00 down, the balance in 3 installments of one, two and three years each. If you could make us a good proposition, we might be able to handle the deal for you. As said above, we will take the matter up with our partners, by which time we hope to again hear from you."

The clause referred to did not contemplate the lessees' handling any deal for the lessor, but it was simply an option to purchase. In 21 Amer. & Eng. Enc. of Law (2d Ed.) at page 932, it is said:

"There is, moreover, a strong inclination on the part of the courts to view any delay with great strictness, on the ground that the party seeking to enforce performance was not bound, while the other party was bound."

In the case of *Meidling v. Trefz,* 48 N. J. Eq. 638, 23 Atl. 824, the court said:

"When contracts are optional in respect to one party, delay on his part is viewed with especial strictness. Fry, Spec. Perf. § 733."

In this case the defendants in error were not bound at any time to purchase this property at the price offered at any time before the termination of this lease, but, if the lessor was offered a price by a proposed purchaser and he desired to sell, he was bound to notify the lessees, and in the event they accepted under the alleged option, in which they were not bound by the terms of the option to do, he was bound to sell to them and to no one else. Such unilateral contracts are construed strictly in favor of the party that is bound and against the party that is not bound. It might be that the proposed purchaser would not wait an indefinite or uncertain length of time, and if by a liberal construction the lessees, under such option, were permitted to carry on a system of diplomatic correspondence with the lessor with a view of determining whether

they could arrange to handle the deal for him, or get more favorable terms, or hold the matter open in the meantime, the proposed purchaser might change his mind and the lessees or defendants in error not being bound to purchase, then declining to accept, the lessor would thereby lose a chance to sell same at what might seem to him to be an advantageous offer.

The option between the lessor and the lessees can only be construed to contemplate a sale for cash. *Masoner v. Bell,* 20 Okla. 618, 95 Pac. 239, 18 L. R. A. (N. S.) 166; *Burks v. Hubbard,* 69 Ala. 379; *Delafield v. Illinois,* 26 Wend. (N. Y.) 192; *School Dist. v. Aetna Ins. Co.,* 62 Me. 330; *Lumpkin v. Wilson,* 5 Heisk. (Tenn.) 555.

The defendants in error, after notice had a reasonable time within which to accept. In lieu of the letter sent, had they written that one of the partners was away, and that he would be back by a certain date and within a reasonable time from the date of the offer they would answer, that would have held the question open for a reasonable time for acceptance or rejection. But we find that they write a letter which is tantamount to a rejection, to ask for an offer, the terms of which are not cash, but suggested payments at different times, and saying, "we hope to hear from you by return mail relative to such offer, and, when a certain partner returns, we hope that we can handle this deal for you." A counter offer amounts to a rejection under the option or the terms proposed, being an effort to make a new contract. Clark on Contracts, pp. 53, 54; section 55, p. 72, Beach on Modern Contracts. The rejection of the offer was irrevocable. Clark on Contracts, p. 53. We think that amounted to a rejection and waiver of any privilege to purchase the lot prior to the termination of the lease at the price offered by the proposed purchaser. The conclusion here reached is decisive of this case, and the other questions raised are not essential to be determined.

The judgment of the lower court is reversed, with instructions to dismiss the petition.

All the Justices concur.