433 P.2d 661

Gustave BALON and Jane Doe Balon,
husband and wife, Appellants,

v.

HOTEL & RESTAURANT SUPPLIES, INC.,
an Arizona corporation, Appellee.

2 CA–CIV 392.

Court of Appeals of Arizona.

Nov. 16, 1967.

Rehearing Denied Dec. 29, 1967.

Review Granted Feb. 20, 1968.

Royal & Carlson, by Robert A. Royal, Tucson, for appellants.

Silver, Silver, Ettinger & Karp, by Jack A. Ettinger, Tucson, for appellee.

MOLLOY, Judge.

This is an action involving a contract for the sale of restaurant equipment and presents the question of whether the seller can show that the purchase price was not in the amount and payable on the terms as indicated in the written sales agreement.

The seller, Hotel Restaurant Supplies, Inc., prepared a written "contract," on its letterhead, for the restaurant equipment to be installed in a new restaurant being built by the buyer, Gus Balon. The contract specified, in part, that the seller agreed "* * * to furnish the following listed equipment delivered and set in place, East 22nd Street location, Tucson, Arizona * * *." The contract as originally submitted concluded with this language:

"All the above items furnished and set in place as stated above for the sum of ($19,950.00) Nineteen thousand nine hundred fifty and no/100—Dollars plus sales tax."

Before the contract was signed, there was a discussion between the buyer and seller, in which he buyer stated that he was of the opinion that he could secure this equipment from another supplier for $19,000. At this point, the words and figures of $19,950 were stricken from the contract, on all four copies, and the following words and figures written in by the seller's agent: "Nineteen hundred and no/100 Dollars ($1900.00)." This figure was initialed by both the buyer and the seller's agent on each copy of the contract. There were four other pen-and-ink changes to the typed contract which were initialed by the parties.

The contract does not specify any time for delivery or any time of payment. At the trial, the seller contended that immediately after the contract was signed, the following conversation occurred:

"* * * I said, 'I need some money on this contract.' And he said, 'I will get you five hundred dollars now and when some of the merchandise starts coming in I will give you approximately $10,000.-00, and then we will work out the balance some way.' "

The buyer, conversely, remembered the conversation as follows:

"* * * I said, 'Remember, I can't give you no money down and when the job is complete and satisfactory, I will pay you in full.' "

After signing the contract, the buyer proceeded to have his restaurant constructed and a few of the purchased items were installed in the new building. However, at about the time that the new restaurant was being completed, and before delivery of the bulk of the items purchased, the seller demanded of the buyer a payment of $10,000 and, upon this being refused, the seller stated that the contract would not be completed. The buyer thereafter purchased the equipment from another supplier and this lawsuit followed. The trial court rendered judg-

ment in favor of the seller, fixing damages in the amount of $4,070.

The buyer contends that the seller is bound by the written agreement and cannot show by parol that the purchase price was $19,000. The parol evidence rule does not prevent a court from reforming a written agreement under appropriate circumstances. Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751 (1955); Longshaw v. Corbitt, 4 Ariz.App. 408, 420 P.2d 980 (1966).

Though neither the complaint nor the pretrial order indicates that this is an action for reformation of a contract, it is very apparent that it was tried on this theory insofar as the expression of the amount of the purchase price is concerned.

One of the issues expressed in the pretrial order is: "What was the purchase price agreed upon?" A written agreement may be reformed when there is "clear and convincing evidence" that the writing does not correctly reflect the intent of the parties. McNeil v. Attaway, 87 Ariz. 103, 110, 348 P.2d 301 (1959); Longshaw, supra. We find sufficient evidence in this record to support a finding by the trial court that the expression of $1900 in the written contract was a mistake and that the true consideration intended to be expressed by the parties therein is the sum of $19,000.

However, insofar as the time of the payment of the purchase price is concerned, we reach an opposite conclusion. The pretrial order expresses only one issue pertaining to rescission: "Did the defendant have a right to rescind the contract?" A statement of an issue in such broad terms as this does a disservice to the pretrial process. The reason for formulating issues at pretrial is to focus the attention of the litigants and the court upon the particular factual and legal matters remaining in controversy, not to cleverly conceal within one terse question as many legal and factual issues as possible. When such a broad statement is contained in the pretrial order, we believe it appropriate to go to the pleadings to determine what the parties are litigating about. In examining the pleadings in this case, we see no allegations to indicate in any way that a mistake was made in the expressions contained in the contract as to when the purchase price was to be paid. As in the case of any claim for relief, a person seeking reformation of a written instrument must, generally, set forth the circumstances entitling him to reform the instrument. Home Owners' L. Corp. v. Bank of Arizona, 54 Ariz. 146, 94 P.2d 437 (1939). The issue of reformation was not tried by the implied consent of the parties, as appropriate objection was made to the testimony of what was said at the time of the inception of this contract, and hence we see no basis procedurally to reform this contract as to time of payment. Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965).

Moreover, in this case, we find the evidence to be insufficient to meet the test set down by our Supreme Court insofar as the reformation of written instruments is concerned. The evidence as to when this purchase price was to be paid, other than that contained within the written document itself, is merely a contest of veracity between the buyer and the seller. There is no corroborating evidence in the record satisfactorily indicating that either the one or the other was telling the truth.

The law is clear that when there is no time specified for payment in a contract for the sale of personalty, the law will imply that the time of payment is concurrent with the delivery of the goods. This is so both under the common law, Gilfallan v. Gilfallan, 168 Cal. 23, 141 P. 623 (1914); Hill v. Fruita Mercantile Co., 42 Colo. 491, 94 P. 354 (1908); Burden v. Elling State Bank, 76 Mont. 24, 245 P. 958, 46 A.L.R. 906 (1926); Masoner v. Bell, 20 Okl. 618, 95 P. 239, 18 L.R.A.,N.S., 166 (1908); Gaylord v. Hoar, 122 Vt. 143, 165 A.2d 358 (1960); and, under the Uniform Sales Act, Rason Asphalt v. Town of Oyster Bay, 8 Misc.2d 411, 167 N.Y.S.2d 175 (1957); and see 46 Am.Jur. Sales § 202, at 383–85 (1962).

At the time of this transaction, this state was still governed by the Uniform Sales Act provision that:

"*Unless otherwise agreed,* delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price and the buyer must be ready and willing to pay the price in exchange for possession of the goods." (Emphasis added) A.R.S. § 44–242.[1]

The written contract not showing it was "otherwise agreed," the problem is presented: Is parol evidence admissible to vary the legal implication that payment is due when the goods are delivered?

The majority rule appears to be that when the law implies a certain agreement from the words that have been incorporated in a written contract, parol evidence is not competent to change that implication. We find the following expression of this law in a prominent treatise:

"It has been questioned whether a parol agreement is admissible which definitely expresses the intent of the parties in regard to a matter covered neither expressly nor by implication of fact in the written contract between them, but concerning which the law makes an implication in the absence of express agreement. In other words, a distinction must be noted between an implication based upon an inference of actual manifestation of assent and an implication made by the law to fill a gap in what has been expressed. Thus, where no time or place for performance is fixed, the law fixes the time or place in accordance with certain rules, which in many cases at least are based on what is reasonable rather than what is actually intended.

"Are these rules part of the contract and, therefore, does parol agreement with reference to their subject matter contradict the writing? It is *so generally held.* Especially it has been held that evidence of a parol agreement that performance should be made at a particular time is inadmissible where the writing specifies *no time for performance.*" (Emphasis added) 4 Williston on Contracts § 640, at 1051–53 (3d ed. 1961).

In the Williston treatise, § 640, at 1051–63, there are numerous cases annotated, falling on both sides of the question under discussion. Most involve a presumption pertaining to "reasonableness" of time or place. We believe it is possible to take a different view as to such a nonspecific implication as opposed to the one under consideration here. In determining "reasonableness," it may very well be proper for the court to look to the surrounding circumstances of the contract, including what was said by the parties at the time of its inception, to determine what is a reasonable time or place under the particular circumstances. For a case taking such a view, see Kansas City Bridge Co. v. Kansas City Str. Steel Co., 317 S.W.2d 370, 85 A.L.R.2d 1252 (Mo. 1958); cf. Arizona Land Title & Trust Co. v. Safeway Stores, Inc., 6 Ariz.App. 52, 429 P.2d 686 (1967).

But this same approach has no necessary applicability to an implication such as that involved here, the legal implication being a reference to a specific event—the act of delivery by the seller. What is said at the time the contract is consummated does not give meaning to an indefinite legal presumption, but, rather, may tend to negate the very implication itself.

This state has consistently taken a conservative view as to what parol evidence will be permitted to vary or change the terms of a written contract. See, i. e., Mutual Benefit H. & A. Assn. v. Ferrell, 42 Ariz. 477, 27 P.2d 519 (1933); Smith v. Mosbarger, 18 Ariz. 19, 156 P. 79 (1916); Apolito v. Johnson, 3 Ariz.App. 232, 413 P.

---

1. This section, along with the other provisions of the Uniform Sales Act, is repealed, effective as of January 1, 1968, by adoption of the Uniform Commercial Code, A.R.S. § 44–2201 et seq.

2d 291 (1966). The application of the parol evidence rule to this case seems particularly appropriate inasmuch as this contract was prepared by the seller. See Harford v. National Life & Casualty Insurance Co., 81 Ariz. 43, 299 P.2d 635 (1956).

The rule we adopt is that when a seller prepares a written contract of sale, which is intended by the parties to have so much dignity that they carefully initial all changes in the document, if the seller does not specify in the contract a time of payment, the legal presumption that payment shall be concurrent with delivery will prevail over any alleged oral statements to the contrary made prior to or at the time of the inception of the contract. We believe that this rule is in the public interest, principally because of its tendency to discourage testifying contests, such as occurred in this action.

This being the applicable law, the refusal of the seller to deliver the goods until a $10,000 partial payment was received constituted an anticipatory, total breach of this contract. Restatement of Contracts §§ 280 and 318 (1932); 17 Am.Jur.2d Contracts § 505, at 985–86 (1964); 17A C.J.S. Contracts § 472(1), at 652–656 (1963). Such breach gave the injured party certain options between inconsistent remedies. Among such inconsistent remedies are those of (1) seeking damages or (2) rescission. Reed v. McLaws, 56 Ariz. 556, 110 P.2d 222 (1941); Yancy v. Jeffreys, 39 Ariz. 563, 8 P.2d 774 (1932); Gallagher v. Viking Supply Corporation, 3 Ariz.App. 55, 61, 411 P.2d 814, 15 A.L.R.3d 1 (1966); 17A C.J.S. Contracts § 472(1), at 657–658 (1963); 17 Am.Jur.2d Contracts § 505, at 985–986 (1964).

In the instant case, the buyer exercised his option to rescind, as clearly indicated by the defendants' counterclaim,[2] by the pretrial order,[3] and by it brief in this court.[4] Hence, the buyer is not entitled to damages for the breach of the contract by seller. Mahurin v. Schmeck, 95 Ariz. 333, 342, 390 P.2d 576 (1964).

Generally, when a contract of sale is rescinded, the parties are under an obligation to return each other to the same position they were in before the inception of the contract. Mahurin v. Schmeck, supra; Fish v. Valley Nat. Bank of Phoenix, 64 Ariz. 164, 167 P.2d 107 (1946); 17 Am.Jur. 2d Contracts § 512, at 994 (1964); 17A C.J. S. Contracts § 438, at 542–545 (1963).

Here, however, the parties cannot be returned completely to status quo, because the walk-in box and the bases for the restaurant stools were incorporated in the buyer's building before the rescission occurred. The value of these particular items is insubstantial in comparison to the total purchase price ($19,000), the parties disagreeing as to whether they are worth $690 or $465. Under these circumstances, an obligation is imposed upon the rescinding party to compensate the other party for the benefit received by such partial performance. Restatement of Contracts §§ 347 and 349(2) (e) (1932); and see Basye v. Paola Refining Co., 79 Kan. 755, 101 P. 658, 25 L.R.A.,N.S., 1302 (1909); Wright v. Dickinson, 67 Mich. 580, 35 N.W. 164 (1887); Hoadley v. House, 32 Vt. 179 (1859); 17 Am.Jur.2d Contracts § 514, at 998–999 (1964); 17A C.J.S. Contracts § 439, at 547–549 (1963).

2. Among the allegations in the counterclaim is:
 "Therefore the defendants rescinded the contract on October 24, 1965."

3. In addition to the reference to rescission in the issues framed by the pretrial order, quoted supra in this opinion, in that portion of the pretrial order stating the "Nature of the Case," we find the following statement of defendants' intentions: " * * * the defendants were forced to rescind the contract * * *."

4. In the "Statement of the Case," appellants' brief, at 7, there is: "At this point, Sam Ruben stated that he would not complete the contract as requested by Gus Balon and Gus Balon considered this a rescision [sic] of the original contract."

486

There being a dispute as to the monetary value to the buyer of the items retained by the buyer a new trial on this limited issue is required. Reversed and remanded for a new trial.

HATHAWAY, C. J., and KRUCKER, J., concur.