673 P.2d 33

**Rick A. PATECELL, Plaintiff/Appellee,**

v.

**Ronald COOK, Defendant/Appellant.**

**No. 2 CA–CIV 4752.**

Court of Appeals of Arizona,
Division 2.

Nov. 30, 1983.

Anderson & Taylor, Ltd., by Thomas W. Anderson, Tucson, for plaintiff/appellee.

Carroll A. Clark, Tucson, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

In May 1979, appellant offered appellee a position as a partner in his telephone equipment business. The agreement was written by appellant and signed by both parties on May 31, 1979. Appellee accepted the term of the agreement and made a capital contribution of $2,000 while appellant contributed $35,395.66.

Section 6 of the partnership agreement set forth certain conditions. It reads:

"Partners' drawing accounts, and profit and loss sharing:

Rick Patecell will draw $2,000.00 per month, paid twice monthly, on the first and 15th of the month, at $1,000.00 each payday. From this draw Rick will reinvest $200.00 per month as stipulated under section four (4).

Ron Cook will draw $4,000.00 each month, paid similarly, . . .

\* \* \* \* \* \*

Profits and losses from the partnership each year will be determined through regular accounting procedures. These profits (or losses) will be shared according to the percentage equity of each partner by each partner."

On April 7, 1980, appellant notified appellee by letter that his interest in the partnership had been purchased. Enclosed with the termination letter was a check for $2,000 representing appellee's initial capital contribution which, on the reverse side, stated:

"When endorsed, this is payment in full for the initial investment into ABC partnership by Rick Patecell according to the agreement for same partnership dated May 31, 1979."

Appellee acquiesced in the termination. On April 30, appellant tendered a check in the amount of $1,601.10, allegedly representing the additional $2,000 offered in his termination letter, less deductions for personal property taken by appellee and for miscellaneous charges and setoffs. The reverse side stated:

"This constitutes payment in full of the final 30-day draw for the 30-day notice of termination period, and no further money is due except that from equity in the valuation this month which is payable in 20 monthly pmts. hereafter."

Appellant admits that, on May 8, 1980, he wrote appellee a letter which included a valuation of the partnership showing the business worth $100,515.16. Appellant calculated that appellee had made investments of $5,844.00 to the partnership and therefore owned 5.5% of the business and offered him the sum of $4,528.33. Included with this letter was a check for $276.41. The reverse of that May 8, 1980 check stated:

"This total payment for the first of 20 equal monthly payments for the entire equity in ABC of Rick Patecell."

Appellee rejected the offer, rejected the valuation of the business and returned the check for $276.41.

On January 2, 1981, Cook was sent an accounting of the business assets of the partnership as of the termination date which showed for the first time partner draws reducing their equity in the partnership.

The court found that appellant was incorrect in maintaining that draws received by appellee were advances against his interest in the partnership and found that the draws were a salary. The court thereupon found that appellee was entitled to receive $10,461 for his equity in the business and the return of his initial investment and ordered appellee to receive an additional $2,000 as a final 30-day draw as provided in the buy-out provision in the agreement.

■ Appellant's primary argument on appeal is that the trial court erred in finding that the twice-a-month draws constituted salary and not a portion of appellee's equity in the partnership. The court found that the agreement, as drafted by appellant, contained no provision for offsetting the partner's draw against the value of his ownership interest. The court also heard testimony that, before the filing of the instant case, neither party had interpreted the agreement as providing that a partner's equity in the business would be offset by his draws and on two occasions before the filing of the action, appellant had determined the value of appellee's partnership interest using the formula provided for in the partnership agreement and did not show the draws reducing appellee's equity in either valuation. The court apparently concluded that the agreement was ambiguous on the point and that, if a contract is ambiguous, the court is able to consider evidence extrinsic to the document in construing it and adopting a meaning given to the agreement by the parties themselves. *Associated Students v. Arizona Board of Regents,* 120 Ariz. 100, 584 P.2d 564 (App. 1978). The court also found that appellant, whose calculation of December 31, 1979, was used to induce appellee to invest addi-

tional funds in the partnership, did not offset appellee's "draws" in his calculation. The record before us supports the court's conclusion that the parties intended the draws to have the effect of salary which would not be offset against appellee's interest in the partnership. The reverse side of the check for repayment of appellee's initial $2,000 investment and the check of May 8, 1980, show appellant believed the draws were separate from appellee's equity interest in the business. Another check of May 8, 1980, was for "payment in full for the 7 days worked in April to April 7 dated of termination as a ptnr. No other draw except that for 30 days after A½pril [sic] 7th under contention at this time re: deductions thereform [sic]."

Appellant was clearly treating the draw as distinct from appellee's equity interest and should be estopped from claiming otherwise.

In *Boyer v. Bowles,* 310 Mass. 134, 37 N.E.2d 489 (1941), the court was faced with a partnership agreement which did not specify whether draws were salary. The court there found that the draws must be treated as advances against profits. The court's language, however, is helpful for our situation:

> "The real question is to ascertain, in so far as possible, the intention and understanding of the parties. In the absence of an express agreement, the rule that no compensation is to be allowed precludes it, unless the other agreements as to the business to be done and the mode of conducting it show that compensation was intended. If this intention is doubtful, the subsequent course of dealing and conduct of the parties may be considered in determining whether there is such an implication in favor of the allowance of compensation as is tantamount to an express agreement." 37 N.E.2d at 493.

The course of dealing shows salary was what was intended and the reformation of the agreement was proper. See *Balon v. Hotel and Restaurant Supply, Inc.,* 6 Ariz. App. 481, 433 P.2d 661 (1967).

Appellant complains that the court should not have found there was a mutual mistake in the way they treated the agreement because the issue was not raised sufficiently in advance of trial. However, the record shows that in his opposition to appellant's motion for summary judgment, appellee set out his understanding of how the valuation of the partnership interest was to be determined pursuant to the agreement and that is the same method which appellee urged at trial. There is no merit to appellant's claim that he was surprised with the "new" approach used by appellee at trial.

In his third point, appellant questions the trial court's finding as to the valuation of the partnership interest. Appellant argues that the financial statement prepared by the accounting firm after the attempt to buy out appellee was made shows a capital loss to the partnership. He argues that the court failed to allocate the net capital loss of the partnership in accordance with the agreement and the testimony of the parties and that therefore appellant was forced to bear the entire capital loss. He maintains that a portion of the capital loss should have been apportioned to appellee in accordance with the agreement and with appellee's testimony. However, the court's findings of fact showed that the balance sheet of the financial statement showed the partners' equity as of April 8, 1980, as $24,451. The income statement showed that the partnership earned net income of $51,936 during the approximate 10 months from the start of the partnership to the date of the buy out or an average of $5,193.60 per month. However, appellant's argument is incomplete since the court went on and utilized figures it found for valuation of inventory, furniture and equipment, accounts receivable and the goodwill value of the partnership in figuring the total valuation of the partnership before it found appellee's percentage interest of 14.36% of that total to be $12,461. The court's findings of fact are supported by the evidence and we will not set them aside unless clearly erroneous. *State ex rel. La-Sota v. Arizona Licensed Beverage Association, Inc.,* 128 Ariz. 515, 627 P.2d 666 (1981);

**98**

*United Bank v. Mesa N.O. Nelson Company,* 121 Ariz. 438, 590 P.2d 1384 (1979); *Shirley v. National Applicators of California, Inc.,* 115 Ariz. 521, 566 P.2d 322 (App.1977).

■ Fourth, appellant reiterates his argument that the partnership agreement was silent as to the treatment of a partners' capital when his draws exceed his rights to partnership income and argues that resort should be made to the Uniform Partnership Act in such a situation. However, here, the trial court found that it was the intention of the parties as shown by the valuations previously done and by the action of the parties that the contract should have been reformed to show that the draws were meant to be salary and not advances of partnership equity. Because the reformation was proper, there is no need to resort to the Uniform Partnership Act to determine what should occur when an agreement is silent.

Appellant's last point is that he had the right to set off the termination offer of $2,000 against what he computes appellee to owe appellant. Since we agree with the trial court's computation, appellee does not owe appellant anything and therefore there is nothing to set off the $2,000 against. Appellant concedes that he offered the $2,000, as, in essence, severance pay, and the amount was properly included in the court's award.

The judgment is affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.