EMERY CONSOLIDATED MINING CO., APPELLANT, *v.* ERICKSON ET AL., RESPONDENTS.

(No. 4,838.)

(Submitted June 3, 1922. Decided July 10, 1922.)

[208 Pac. 935.]

*Claim and Delivery—Evidence—Inadmissibility—Corporations —Sale of Property—Power of President—Nonsuit.*

Claim and Delivery — Judgment Docket in Other Action — Identity of Property—Evidence—When Inadmissible.
1. In an action in claim and delivery to recover scrap iron and machinery parts, a judgment docket of a justice of the peace in an action by plaintiff against the person from whom defendant claimed to have bought the property was improperly admitted in the absence of a showing that the property mentioned in the complaint in the justice court was identical with that described in the claim and delivery action.

[64 Mont. 190.]

Corporations—Sale of Property—Power of President—Declarations—Inadmissibility.

    2.   Generally speaking, the president of a corporation has no implied authority to sell its property; therefore, unless the extent of his power vested in him by its by-laws or by the board of directors is first shown or that such power was implied in him from the character of business carried on, his declarations as to a sale by him were insufficient to bind the corporation.

Trial—Nonsuit—Failure to Stand on Motion—Effect.

    3.   Where defendant fails to stand upon his motion for nonsuit and introduces evidence which supplies the defects in plaintiff's case, he cannot complain of the order denying the motion.

*Appeals from District Court, Powell County; J. J. Lynch, Judge.*

ACTION by the Emery Consolidated Mining Company against Arthur Erickson and another. From judgment for defendants and an order denying new trial, plaintiff appeals. Reversed.

Cause submitted on briefs of Counsel.

*Mr. J. H. Duffey* and *Mr. S. P. Wilson,* for Appellant.

The rule or law followed practically without exception in cases of this kind is that the plaintiff must make a *prima facie* case by showing his ownership of the property and his right of possession, but when he has established such a case, *prima facie,* if the defendant seeks to justify by a title from the same source as plaintiffs, or a title through the plaintiff himself, then the burden to show such title shifts to the defendant.   (34 Cyc. 1500; *Osmers* v. *Furey,* 32 Mont. 581, 81 Pac. 345; *Quackenbush* v. *Graf,* 37 S. D. 385, 158 N. W. 409; *Cramton* v. *Chapman,* 85 Vt. 74, 81 Atl. 231; *Colean Mfg. Co.* v. *Johnson,* 82 Kan. 655, 20 Ann. Cas. 296, 109 Pac. 403; *First Nat. Bank of Clyde* v. *Parkhurst,* 54 Kan. 155, 37 Pac. 1001; *Thompson* v. *Clark* (Okl.), 178 Pac. 655; *Kidder* v. *Stevens,* 60 Cal. 414.)

---

    2.   Competency of admission or declaration of officer as evidence against corporation, see note in **Ann. Cas. 1912C,** 109.

*Mr. Charles E. O'Neill* and *Mr. Clarence Hanley,* for Respondents.

Appellant's contention is, that the burden of proof to show a sale was on defendant. With this, respondent cannot agree. It is elementary that in an action of replevin, where plaintiff asserts title and right to possession, and defendant denies title in plaintiff, the burden is upon plaintiff to prove his title by a preponderance of the evidence. (*Moore* v. *Marsh,* 59 Wash. 151, 109 Pac. 606.) In the case at bar, defendant interposed a general denial. Under such a plea he could show any matters which would defeat plaintiff's claim and could disprove plaintiff's allegations or prove other inconsistent facts, or show his own right of possession or title in a third party. (*Kaufman* v. *Cooper,* 38 Mont. 6, 98 Pac. 504, 1135; *Frank* v. *Symons,* 35 Mont. 56, 88 Pac. 561; *Heinemann* v. *Heard,* 62 N. Y. 448, 455.)

The plaintiff was required to make a *prima facie* case. When he has done this, then the defendant is required to show matter in justification or defense. When defendant has done this, the plaintiff is required to obviate the effect thereof. (34 Cyc. 1500.) In other words, plaintiff was required to show no sale. As the instruction complained of put this burden upon the plaintiff, we submit the court did not commit error. (*Heinemann* v. *Heard, supra; Ott* v. *Specht,* 8 Houst. (Del.) 61, 12 Atl. 721; *Hillman* v. *Brigham,* 110 Iowa, 220, 81 N. W. 451.)

Although it is not contended that Mr. Whitworth sold the property as an individual, yet there is sufficient evidence to justify a conclusion of the jury that, acting within the scope of his authority, he sold the property as an agent of the corporation. The complaint in the justice court action wherein the corporation alleges it had sold certain property to Rosenblatt might well be taken as a ratification of Whitworth's acts, even though he did not have authority, implied or express, to sell the property of the corporation. At any rate, the burden of showing a want of authority was on the plaintiff in this in-

stance.  "Burden of showing want of authority is upon cor-
poration."  (*McKee* v. *Cunningham,* 2 Cal. App. 684, 84 Pac.
260.)  "A corporation is liable for the acts of a person within
the apparent scope of his authority, where he is held out to
the public as its officer or agent or is permitted to act as such."
(*Jack* v. *National Bank of Wichita,* 17 Okl. 430, 89 Pac.
219.)  "One who deals with a corporation agent may rely
upon his apparent authority, and for acts done within the
scope of that authority, the corporation is bound."  (*Livieratos*
v. *Commonwealth Security Co.,* 57 Wash. 376, 106 Pac. 1125.)

MR. JUSTICE FARR delivered the opinion of the court.

This is an action in claim and delivery to recover certain
scrap iron and machinery parts.  The case was tried to a
jury, which found a verdict for the defendants.  Plaintiff ap-
peals from the judgment entered on the verdict and from the
order denying its motion for a new trial.

Plaintiff is a mining company owning certain mining claims
about eight miles east of Deer Lodge, in Powell county, Mon-
tana, together with a mill and mining machinery located
thereon.  The scrap iron and machinery parts described in the
complaint are a portion of the machinery which was contained
in plaintiff's mill upon its mining property and had been
installed in the mill from about 1907 until the latter part of
1918, when it was hauled by the defendant Arthur Erickson,
at the instance of one Rosenblatt, to Deer Lodge and was there
piled in an alley back of the Old City Hotel.  It was the con-
tention of defendants at the trial that the plaintiff had, prior
to the hauling by Erickson, made a sale of all the material
hauled by him to Rosenblatt, thereby parting with its title
which otherwise was unquestionably established in the plain-
tiff.  The plaintiff contended that it had never sold or other-
wise parted with its title to the property involved in this
particular suit, although admitting that Rosenblatt had ob-
tained some scrap iron from the mining property, which he
had shipped out of the state.  It is conceded that Erickson,

64 Mont.—13

beginning about November 1, 1918, at the behest of Rosenblatt, hauled the property in question from plaintiff's mill to Deer Lodge; that upon July 15 following, he purchased the property at sheriff's sale under execution issued on a judgment in a suit brought by him against Rosenblatt, it being sold as Rosenblatt's property; that soon after he purchased it, he sold it to the defendant Rothman, who took possession of it and started moving it from where it had been stored in the alley to his own home, and, while moving it, it was taken by the sheriff pursuant to the claim and delivery proceedings in this action.

The court instructed the jury to return a verdict in favor of the defendant Erickson upon the theory that prior to the commencement of this action Erickson had parted with the possession of the property, and whether or not his possession had ever been rightful, or he had any right to sell it to Rothman, was an immaterial question in the case; the property being entirely in the possession of Rothman at the time of the commencement of the action. Plaintiff acquiesced in this ruling.

Error is first assigned to the order overruling the plaintiff's motion for a directed verdict. The facts may be summarized to the effect that the property described in the complaint confessedly is the machinery and broken parts which, prior to being taken possession of by defendant Erickson, was in the mill of plaintiff and was its property, unless it had been sold to A. Rosenblatt, and there is no room for a contention that plaintiff had parted with its title in any other manner; and likewise there is no room for contention that Rothman had a scintilla of title otherwise than under the theory of a sale to Rosenblatt. Whether there had been a sale to Rosenblatt was, therefore, the only question for determination by the trial court or jury. And the first question for this court's determination is whether there was sufficient competent evidence to warrant the submission of that question to the jury. If there was not, then the motion should have been sustained.

The defendant Arthur Erickson testified that at the request of Rosenblatt he hauled certain junk, scrap iron, and old pipe from the plaintiff's plant and property—a little over sixty tons—and that a little over thirty-two tons of it was loaded on to a car on the Northern Pacific tracks at the town of Deer Lodge. He testified that before hauling this material, he talked with Mr. Joseph Whitworth, who was then the president of the plaintiff corporation, and that he asked Whitworth "if Mr. Rosenblatt bought this stuff, and whether it was all right for me to haul it or not. * * * What he did tell me was that it was all right, that Rosenblatt had paid for it, and to go right ahead and haul it if he wanted me to. I didn't ask him how much machinery Rosenblatt had bought. I didn't ask him how much the company had sold to Rosenblatt." Whitworth, on rebuttal, testified that he had no recollection of any conversation to that effect; that when Erickson was hauling the first car, he (Whitworth) asked Erickson who authorized him to haul the stuff, to which Erickson replied, "Mr. Rosenblatt." Whitworth further testified that "Rosenblatt did not buy this stuff; he was to take me up, and I was to show him what we had, but we never went up; he simply went up and took it out for himself [Mr. Rosenblatt] without any authority. I didn't tell Mr. Erickson anything about hauling more of it. When he was hauling that first car, he was hauling some rails, and I told him he must not haul those rails or any pipe, but I wanted it left there."

In support of defendants' contention that there had been a [1] sale of the property from the plaintiff mining company to Rosenblatt, there was introduced in evidence the record of an action in the justice court of Cottonwood township, Powell county, wherein this appellant was plaintiff and A. Rosenblatt was defendant. The complaint in that action alleged that plaintiff had sold to A. Rosenblatt 62,100 pounds of scrap iron at nine dollars per ton, and plaintiff therein sought judgment for the purchase price. A summons and writ of attachment were issued when suit was commenced, but the suit

was later dismissed; the docket reciting that it had been ''settled out of court.'' The plaintiff objected to this justice court complaint being received in evidence on the ground ''That it does not appear that the property mentioned in the complaint for the purchase price of which the action was brought is in any manner contained in the property described in the complaint in this suit.'' This objection was overruled, and the complaint was received in evidence.

It was necessary for the defendants who offered this testimony to show its admissibility. This could only be done by showing that the property for which the plaintiff sought pay in that suit in the justice court was the same property that is involved in this present controversy. If it was not the same, if it was different property, then it must be apparent that so far as this suit is concerned it is entirely immaterial that plaintiff brought an action for the recovery of its value. If it was the same property, then the evidence would have been relevant and material as showing, or tending to show, that there had been in fact a sale of the material to Rosenblatt, which defendants undertook to prove in order to prevent judgment going against them. However, the complaint in the justice court case was received in evidence without any such showing. In rebuttal, Joseph Whitworth testified in regard to the bringing of this justice court action that the property that was attached at that time was not any of the property that is involved in this action, and that the property involved in that attachment suit went to Seattle as far as he knew. ''I say that that property was shipped away out of the country entirely, and not any of that property is in any wise the property involved in this action.'' This testimony of Joseph Whitworth would appear to be corroborated by the defendant Erickson's statement that he had loaded a little over thirty-two tons of this material he got from the mines at Rosenblatt's request on to a car on the Northern Pacific Railroad Company's track. So far as the allegations in the two complaints are concerned, there is not anything to show identity of subject matter—

rather the contrary. In the instant case, the property involved is described as "500 feet of iron pipe, one pile of scrap iron, pump, drill, steel, and various items of mining machinery, valves and other paraphernalia"; while in the complaint in the justice court attachment suit, the property for which plaintiff sought to obtain pay was described as "62,100 pounds of scrap iron"—substantially the amount that Erickson said he loaded on to the car. There is here more than a mere conflict in the evidence. There is an entire failure of proof by defendants. It was necessary for them, in order to make this justice court complaint competent to be received in evidence in this action, to show identity of the material involved in the two suits. Not having done so, the justice court complaint was improperly admitted in evidence and should not have been considered.

The only other offered evidence in any degree bearing upon [2] the defendants' contention that there had been a sale of the property involved in this suit by the plaintiff to Rosenblatt, consists of statements which Erickson said that Whitworth had made to the effect that Rosenblatt had bought some of the mining material. The only theory upon which this evidence could have been received was that it constituted declarations against interest by an officer of the corporation, binding upon it. Assuming for the sake of the argument that the evidence was admissible on this ground, the evidence in itself is not sufficient to prove that there had been a sale by the plaintiff to Rosenblatt of the property involved in this particular suit. Erickson said: "I didn't ask him how much machinery Rosenblatt had bought. I didn't ask him how much the company had sold to Rosenblatt. * * * I didn't mention T-rails. I didn't mention pumps that are used in mines. I didn't mention any machinery of large dimensions. I didn't mention any valves. I didn't mention machinery that is usually used in a mill for mining purposes; just junk I mentioned. * * * I saw rails there; I took them. I took pumps; I don't think they were in working condition, I don't

know. * * * I took pipe, I don't know how much pipe I took. There was a couple of loads of pipe, not quite a couple of loads. They were of all sizes and lengths.''

Declarations of this character by an officer of a corporation are not of themselves sufficient evidence of a sale by the corporation. Generally speaking, the president of a corporation has no implied authority, as an incident of his office, to sell its property. (*Hopkins* v. *Paradise Heights F. G. Assn.,* 58 Mont. 404, 193 Pac. 389.) There is not any evidence in the record to show the power or authority vested in the president by the by-laws of the corporation, or the power or authority given to the president by the board of directors; nor is there anything from the character of the business carried on by the corporation to indicate that such power or authority could be implied in the president. In fact, there is not any evidence from which an inference could be drawn that the president possessed authority to sell the company's property, or to bind the company by a declaration in relation to the sale of its property. Before such evidence can be received or considered, there must be some showing made that the president was speaking with authority. Even though Whitworth, the president, had such authority, the most that can be said of his declarations to Erickson, assuming them to have been made, is that there had been a sale of some of the material at the mine to Rosenblatt; but it cannot be inferred therefrom that all the materials at the mine, or any of the material involved in this suit, had been sold by the plaintiff to Rosenblatt.

The district court apparently did not give any consideration to this testimony, and it was not influenced thereby in overruling plaintiff's motion for a directed verdict, for the court said: ''I am letting the case go to the jury for the other defendant solely on the admission found in the complaint in that justice court case entitled '*Emery Consolidated Mining Company* v. *A. Rosenblatt,*' and it is for the jury to say whether a sale took place at all, and if it did, whether or not it included the property in controversy.''

[64 Mont. 190.]

But the complaint in the justice court was not made relevant and should not have been considered by the court in its ruling on the plaintiff's motion for a directed verdict. Without this complaint in the record, there was not any evidence sufficient to submit the question of a sale, as claimed by the defendants, from the mining company to Rosenblatt, to the determination of the jury. The court therefore erred in not granting plaintiff's motion for a directed verdict.

While plaintiff's evidence, when it rested its case, was not [3] entirely satisfactory, particularly upon the question of the identity of the material back of the Old City Hotel with that described in the complaint, the defendants did not stand upon their motion for a nonsuit—they elected to put in evidence in support of their defense which supplied all deficiencies in the plaintiff's proof.

The judgment and order appealed from are therefore reversed, and the cause is remanded, with directions to the district court to enter judgment in the usual form in favor of the plaintiff and against the defendant M. Rothman, for the return of the property described in the plaintiff's complaint, to the plaintiff, or for the sum of $500, the undisputed value thereof, in case a return cannot be had.

*Reversed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.