[Civ. No. 4473. First Appellate District, Division Two.—March 16, 1923.]

## ROBERT ROMER, Respondent, v. WILLIAM WEHNER, Appellant.

[1] CONTRACTS—SALE OF GRAPES AND GRAPE JUICE—INDIVISIBLE CONTRACT—ACTION FOR DAMAGES—PLEADING—EVIDENCE—FINDINGS.— In an action by the vendee for damages for breach of a contract to deliver grapes and grape juice, and in which the vendor cross-complains for damages for alleged breach of the contract by the vendee, where the pleadings are all framed upon the theory that one single contract was made involving the sale of both grapes and grape juice, and the evidence unmistakably proves that a single contract was made, findings that a separate contract was made for the sale of grapes alone and that because of the failure of the parties to agree upon the color and quality thereof no contract was made for the sale of the grape juice, are not within the issues and are not supported by the evidence.

[2] ID.—ADMISSION BY PLEADINGS—FINDINGS—JUDGMENT.—When the allegations in a pleading are admitted, a finding contrary to such admission is beyond the issues of the controversy and will not support a judgment.

[3] ID.—TIME OF PAYMENT—AGREEMENT—CUSTOM—EVIDENCE—FINDINGS.—In this action for damages for breach of a contract for the sale and purchase of grapes and grape juice, the finding of the trial court that by the terms of the agreement "all of said personalty was to be paid for when delivered" was not supported by any evidence and was contrary to the evidence of plaintiff, and there was no evidence to support the finding that there was a general, uniform, and recognized custom among the producers in the locality where the agreement was to be performed that payment was to be made after final and complete delivery; and, on the other hand, the allegation in the answer that it was the general, uniform, and recognized custom "that, where such products were to be delivered in installments, payment was to be made for each installment upon delivery thereof," found support both in the evidence and in the action of the parties.

[4] ID.—SALE OF FARM PRODUCTS—DELIVERY—PAYMENT.—Where the agreement of sale is silent as to time of payment, the law fixes it as of the time of delivery; and where fruit or farm products are contracted to be delivered in installments as they ripen or are harvested, payment is due upon delivery of each installment unless otherwise fixed in the contract.

APPEAL from a judgment of the Superior Court of Santa Clara County. F. B. Brown, Judge. Reversed.

The facts are stated in the opinion of the court.

A. M. Free, F. H. Bloomingdale and Courtney L. Moore for Appellant.

Louis Oneal and Wm. F. James for Respondent.

NOURSE, J.—Plaintiff sued to recover damages for the breach of a contract for the sale of grapes and grape juice. The defendant answered and filed a cross-complaint seeking the recovery of damages from plaintiff for his breach of the same contract. In his amended complaint the plaintiff alleged that "said defendant agreed to sell to plaintiff, and plaintiff agreed to buy 200 tons of black grapes of the crop of 1919 . . . for the sum of $35 per ton; and also 25,000 gallons of unfermented black grape juice . . . for the price of 45c per gallon; that by the terms of said agreement all of said personalty was to be paid for when delivered. . . .

"That plaintiff is, and has at all times been, ready, willing and able to receive and pay for the said grapes and grape juice, according to said agreement, and to otherwise perform all of the terms of said agreement on his part to be done or performed. . . .

. "That said personal property so agreed to be sold, and remaining undelivered, if the same had been delivered according to said agreement, would be now, and when delivered, of the value to plaintiff of $21,706.01."

The execution of the agreement as alleged in the amended pleading was admitted by the defendant in his answer, but some of its terms were controverted, such as place of delivery of the grapes, color of the grape juice, and the time of payment for both the grapes and the grape juice. In the cross-complaint the defendant alleged that the cross-plaintiff and cross-defendant "entered into an agreement whereby cross-plaintiff agreed to sell to said cross-defendant, and said cross-defendant agreed to purchase from cross-plaintiff 200 tons of grapes of the crop of 1919, at the agreed price of $35 per ton, and 25,000 gallons of grape juice at the agreed price of 45c per gallon; said cross-de-

fendant to furnish and provide the boxes for delivery of said grapes, and the barrels for delivery of said grape juice, and said grape juice to be taken from a stock of grape juice which had theretofore been manufactured by cross-plaintiff, and which was then being stored by cross-plaintiff upon his premises.'' It was further alleged that the parties expressly agreed that both the grapes and the grape juice were to be delivered in installments as harvested or prepared for delivery and that payment therefor was to be made upon the delivery of each installment; that various installments of the grapes were delivered to the cross-defendant and accepted and paid for by him, but that cross-defendant, though often requested to do so, had failed and refused to pay for certain installments thereof, the agreed price of which amounted to $1,516.84. As a second cause for cross-complaint it was alleged that the cross-defendant, though often requested to do so, had failed to deliver to cross-plaintiff any barrels for the shipment of the grape juice, and had refused to receive, accept, or pay for any of the grape juice, to the damage of the cross-plaintiff in the sum of $3,750.

In the answer to this cross-complaint the plaintiff and cross-defendant ''admits that said parties entered into an agreement whereby cross-plaintiff agreed to sell to cross-defendant and cross-defendant agreed to purchase from cross-plaintiff 200 tons of grapes of the crop of 1919 at the agreed price of $35 per ton, and 25,000 gallons of grape juice at the agreed price of 45c per gallon.'' By failing to deny, the cross-defendant admitted the allegation in the cross-complaint that by the terms of said agreement he was to furnish and provide the boxes for the delivery of said grapes and the barrels for the delivery of the grape juice. He did deny that said grape juice was to be taken from the stock theretofore manufactured by the cross-plaintiff and which had been stored upon his premises, and alleged that such grape juice was to be ''unfermented black grape juice.''

Upon the issues so framed the parties went to trial and the trial court found that the parties executed an agreement whereby the plaintiff agreed to buy 200 tons of black grapes to be delivered by said defendant as said grapes were ripened, gathered, and harvested for the sum of $35 per ton, and that by the terms of said agreement all said personalty was to be paid for when delivered; that it was not

true that at the time said agreement was made there was a general or uniform or recognized custom among producers in the locality where said agreement was to be performed that, when such products were to be delivered in installments, payment was to be made for each installment upon delivery thereof, but that the custom among such producers was that in such cases payment therefor was to be made after final and complete delivery; that there was no express agreement between these parties that each installment was to be paid for upon delivery thereof, and that the payments made by plaintiff were not made in accordance with the terms of said contract, but were merely advancements made by plaintiff to defendant on account thereof. It was further found that there was never any contract or agreement between said parties for the sale of 25,000 gallons or any other quantity of grape juice; that there were negotiations between said parties tending to such a contract, but that because of their failure to agree upon the color and quality of such grape juice no contract was made between them. Deliveries under the contract were made of approximately 109 tons and the damage suffered by the plaintiff for the failure to deliver the remaining 90 tons was found to be $2,273.34. As against this plaintiff had an offset of $1,426.84, the unpaid balance on the amount of grapes which had been delivered. Plaintiff was awarded a judgment for the difference, amounting to $846.50, and from this judgment defendant prosecutes this appeal.

The grounds of appeal urged by the appellant are: (1) That there is a fatal variance between the pleadings, findings, and proof, the parties having admitted and proved one contract and the court having found an entirely different contract; (2) That the conclusion of the trial court that the appellant breached the contract is unsupported by the evidence.

[1] (1) The first point raised by appellant as to the variance between the pleadings, findings, and proof must be sustained and requires a reversal of the judgment. The pleadings were all framed upon the theory that one single contract was made involving the sale of grapes and grape juice. The evidence unmistakably proves that a single contract was made. The answer, the cross-complaint, and the answer to the cross-complaint all admitted this fact. The

finding that a separate contract was made for the sale of the grapes alone was not within the issues and was not supported by the evidence. All the evidence went to prove that the arrangements for the sale of the grapes and the grape juice were all made at the same time, in the same conversation, and as a part of the same transaction; but, notwithstanding the evidence, the trial court was bound by the pleadings, and its finding of a separate contract must be disregarded. This is the unquestioned rule of a long line of decisions. In the first place, section 462 of the Code of Civil Procedure provides: "Every material allegation of the complaint, not controverted by the answer, must, for the purposes of the action, be taken as true." In *Burnett* v. *Stearns*, 33 Cal. 468, 474, the supreme court said: "The finding should be confined to the facts in issue. The province of the court in respect to facts is to determine but not to raise the issue. It is insisted on the other side that it will be presumed the court found the fact in question from competent evidence. The answer is, it will not be presumed that evidence was introduced to contradict the admission of record." In *White* v. *Douglass*, 71 Cal. 115, 119 [11 Pac. 860, 862], the supreme court said: "Where a complaint in an action contains an allegation of fact which is distinctly and unqualifiedly admitted by the answer, there is no issue as to the fact. The allegation of the fact being admitted is conclusive. A finding against the admission is therefore outside the issues, and a judgment based upon such a finding, or upon a finding, which is not justified by or is contrary to the evidence, cannot be sustained." In *In the Matter of Doyle*, 73 Cal. 564, 570, 571 [15 Pac. 125, 128], the same court said: "When a trial is had by the court without a jury, a fact admitted by the pleadings should be treated as 'found.' . . . If the court does find adversely to the admission, such finding should be disregarded in determining the question whether the proper conclusion of law was drawn from the facts found and admitted by the pleadings. . . . In such case the facts alleged must be assumed to exist. Any finding adverse to the admitted facts drops from the record, and any legal conclusion which is not upheld by the admitted facts is erroneous."

[2] The foregoing authorities were all cited with approval in *Welch* v. *Alcott*, 185 Cal. 731, 754 [198 Pac. 626],

and it, therefore, may be taken as the settled rule in this state that when the allegations in a pleading are admitted, a finding contrary to such admission is beyond the issues of the controversy and will not support a judgment. In this case, as has been said, the respondent up to the time of judgment was insisting upon an entire and indivisible contract for the sale of grapes and grape juice, and was demanding damages for the failure to deliver both. On the other hand, the appellant was conceding a contract for the sale of grapes and grape juice, but disputed respondent's claim regarding the color of the grape juice and other minor details of the contract, but both parties at all times treated the transaction as an entirety; and if, as found by the trial court, their minds did not meet on the grape juice, it is obvious that the contract which was pleaded was not proved.

[3] . (2) As to the second point, little need be said: In the amended complaint it was alleged that by the terms of the agreement "all of said personalty was to be paid for when delivered." The trial court found that this allegation was true. Respondent himself testified that it was not true. There was no evidence to support the finding. The trial court also found that there was a general, uniform, and recognized custom among the producers in the locality where the agreement was to be performed that payment therefor was to be made after final and complete delivery. The only evidence on this issue was to the effect that when the producers came from the outside or that when the grapes were to be exported (both of which conditions applied to respondent's case), the uniform custom was that payment should be made either before delivery or upon delivery of each installment. There was, therefore, no evidence to support the finding of the trial court relating to the custom of payment. On the other hand, the allegation in the answer that it was the general, uniform, and recognized custom "that, where such products were to be delivered in installments, payment was to be made for each installment upon delivery thereof," finds support in the evidence and in the action of the parties. Proof was made that deliveries began on October 15, 1919, and continued until November 14th; that three payments were made, to wit, on October 25th, November 1st, and November 7th; that on November 1st respondent wrote to appellant asking him to send weight

tags upon each delivery and added: "Then it won't even be necessary for you to make out a bill. We will mail the check on receipt of the weight tags." Thereafter three other deliveries were made, the price of which the court found to be $1,426.84. Payment of this sum was demanded of the respondent, and he was notified that unless payment was made further deliveries would be refused. His only answer was the commencement of this action. [4] When the agreement is silent as to time of payment the law fixes it as of the time of delivery. (Sec. 1784, Civ. Code.) And where fruit or farm products are contracted to be delivered in installments as they ripen or are harvested, payment is due upon delivery of each installment unless otherwise fixed in the contract. (*Veerkamp* v. *Hulburd C. & D. Co.*, 58 Cal. 229 [41 Am. Rep. 265].)

Judgment reversed.

Langdon, P. J., and Sturtevant, J., concurred.