BURDEN, Respondent *v.* ELLING STATE BANK, Appellant.

(No. 5,797.)

(Submitted March 4, 1926. Decided March 22, 1926.)

[245 Pac. 958.]

*Contracts—Sales—Unlawful Interference—Complaint—Time of Payment—Trial—Nonsuit.*

Contracts—Unlawful Interference by Third Persons—Complaint.
    1.   An action against a stranger to a contract for damages caused by his unlawful interference with its performance is one for a tort, and not one upon the contract, and therefore plaintiff was not required to plead in his complaint that he had performed all conditions precedent to be performed by him under it, to entitle him to recover.

Same—Unlawful Interference—Complaint—Sufficiency.
    2.   If the complaint in an action for unlawful interference with the performance of a contract alleges that the obligor refused performance, that his action was induced by the unlawful acts of

---

1.   See 15 R. C. L. 63.
3.   See 9 R. C. L. 215.

[76 Mont. 24.]

defendant, a stranger to the contract, and the resulting damages, it is sufficient to withstand a general demurrer.

Trial—Motion for Nonsuit—Failure of Movant to Stand upon—Appeal.
3. Where defendant does not stand on his motion for nonsuit he assumes the risk of aiding the plaintiff's case by his own evidence, and on appeal in such a case the evidence in its entirety will be considered in determining whether the court erred in sustaining the motion.

Sales—Time for Payment not Fixed—Payment to be Made on Delivery.
4. Where one buys personal property at a stipulated price and no time of payment is agreed upon, the law fixes the time of delivery as the time of payment, and the rule declared by section 7549, Revised Codes of 1921, that if no time is specified for the performance of an act, a reasonable time for performance is allowed, has no application.

Same—Failure to Make Payment at Time of Delivery—Breach of Contract—When Action for Unlawful Interference not Maintainable.
5. Under the above rule (par. 4) *held* that where the purchaser of a band of sheep under a contract which did not provide for the time of payment failed to make payment in cash or by guaranteed check as demanded by the seller at the time he was ready to make delivery, the latter was justified in declaring the contract breached and refusing to make delivery; thereafter no contractual relations existed between the parties and the then acts of a stranger with relation to the sale of the animals did not give rise to a cause of action for unlawful interference with the contract.

[1] Torts, 38 Cyc., p. 523, n. 14.
[2] Torts, 38 Cyc., p. 523, n. 14.
[3] Trial, 38 Cyc., p. 1561, n. 53.
[4] Sales, 35 Cyc., p. 262, n. 95.
[5] Sales, 35 Cyc., p. 133, n. 2; p. 272, n. 72.

*Appeal from District Court, in the Fifth Judicial District, Madison County; W. E. Carroll, a Judge of the Second District, presiding.*

Action by Charles A. Burden against the Elling State Bank. Judgment for plaintiff and defendant appeals. Reversed and remanded, with direction.

*Mr. M. M. Duncan,* for Appellant, submitted a brief and argued the cause orally.

The complaint does not state a cause of action. (*Porter* v. *Plymouth Gold Min. Co.,* 29 Mont. 347, 101 Am. St. Rep. 569,

4. See 23 R. C. L. 1382.
5. Right of purchaser to opportunity to pay in cash where tender has been made in other medium, see notes in 11 A. L. R. 811; 23 A. L. R. 630.

74 Pac. 938; *Enterprise Sheet Metal Works* v. *Schendel,* 55 Mont. 42, 173 Pac. 1059; *Ivanhoff* v. *Teale,* 47 Mont. 115, 130 Pac. 972; *Livesley* v. *Slauss,* 104 Or. 356, 206 Pac. 850, 207 Pac. 1095; *Schucking* v. *Young,* 78 Or. 483, 493, 153 Pac. 805; *Chandler* v. *Robertson,* 39 Ky. (9 Dana) 291; *Weatherman* v. *Reid,* 62 Mont. 522, 205 Pac. 251; *Jendersen* v. *Hansen,* 50 Mont. 216, 219, 146 Pac. 473; *Cassidy* v. *Slemons & Booth,* 41 Mont. 426, 109 Pac. 976; *Ernst* v. *Cummings,* 55 Cal. 179.)

All of the evidence is to the effect that he lived up to the very letter of this contract, and that only after the Bicknell Corporation had breached it did he declare it at an end and ship the lambs on his own account. This he had a right to do under the law as announced by this court in the following cases, and, too, without being liable for the return of the down payment of $1,200: *Clifton* v. *Willson,* 47 Mont. 305, 132 Pac. 424; *Cook-Reynolds Co.* v. *Chipman,* 47 Mont. 289, 133 Pac. 694; *Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700; *Donlan* v. *Arnold,* 48 Mont. 416, 138 Pac. 775; *Suburban Homes Co.* v. *North,* 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2; *Ellinghouse* v. *Hansen Packing Co.,* 66 Mont. 444, 213 Pac. 1087.

The contract in this case is silent as to the time of payment, but it is the universal rule that where a contract of sale of personal property is thus silent the time of payment is the time of delivery. (*McIllmoil* v. *Frawley Motor Co. et al.,* 190 Cal. 546, 213 Pac. 971; *Hart-Wood Lumber Co.* v. *Bonaly,* 192 Cal. 180, 219 Pac. 432; *Johnson* v. *Iankovetz,* 57 Or. 24, 102 Pac. 799, 110 Pac. 398; *Eaton* v. *Blackburn,* 52 Or. 300, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198, 20 L. R. A. (n. s.) 53, 96 Pac. 870, 97 Pac. 539; *Stum* v. *Hadrich,* 7 Cal. App. 241, 94 Pac. 82; *De Bakscy* v. *Strain,* 61 Cal. App. 518, 215 Pac. 105; *Romer* v. *Wehner,* 61 Cal. App. 411, 214 Pac. 993; *City of Pendleton* v. *Jeffery & Bufton,* 95 Or. 447, 188 Pac. 176; *Newmark & Co.* v. *Smith,* 26 Cal. App. 339, 146 Pac. 1064; *Barnard & Bunker* v. *Houser,* 68 Or. 240, 137 Pac. 227; *Loewi* v. *Long,* 76 Wash. 480, 136 Pac. 673; *Meeker* v. *Johnson,* 5 Wash. 718, 32 Pac. 772, 34 Pac. 148.)

Also it is held that if the contract is for the delivery of articles of personal property of a certain fixed value and the articles are then not delivered, it is immediately converted into a money obligation. (13 C. J. 685, par. 779; *McKinnie* v. *Lane,* 230 Ill. 544, 120 Am. St. Rep. 338, 82 N. E. 878; *Cummings* v. *Dudley,* 60 Cal. 383, 44 Am. Rep. 58; *Delafield* v. *San Francisco & S. M. Ry. Co.,* 5 Cal. Unrep. 71, 40 Pac. 958.)

*Mr. S. P. Wilson,* for Respondent, submitted a brief and argued the cause orally.

Interference by a stranger to a contract, with the contract, is an actionable tort. According to the rule laid down by these cases, an action need not be brought for breach of the contract but the one inducing the breach of the contract becomes primarily liable for tort independent of the contract, and it is not necessary that the other party to the contract need be made a party to the action. (*Simonsen* v. *Barth,* 64 Mont. 95, 208 Pac. 938; *Schonwald* v. *Ragains,* 32 Okl. 223, 39 L. R. A. (n. s.) 854, 122 Pac. 203; *Wheeler* v. *Stenzel Co.* v. *American Window Glass Co.,* 202 Mass. 471, L. R. A. (n. s.) 1915F, 1076, 89 N. E. 28; *Raymond* v. *Yarrington,* 96 Tex. 443, 97 Am. St. Rep. 914, 62 L. R. A. 962, 72 S. W. 580, 73 S. W. 800; *Twitchell* v. *Nelson,* 126 Minn. 423, 148 N. W. 451; *Hollenbeck* v. *Ristine,* 114 Iowa, 358, 86 N. W. 377; 13 C. J. 714, par. 825; 15 R. C. L. 54; *Parker Paint & Wallpaper Co.* v. *Local Union 813,* 87 W. Va. 631, 16 A. L. R. 222, 105 S. E. 911; *Case Threshing Machine Co.* v. *Fisher & Aney,* 144 Iowa, 45, 122 N. W. 575; *Bowen* v. *Speer* (Tex.), 166 S. W. 1183; *Kock* v. *Burgess,* 167 Iowa, 727, 149 N. W. 858; *Martens* v. *Reilly,* 109 Wis. 464, 84 N. W. 840; *London Guar. & Acc. Co.* v. *Horn,* 206 Ill. 493, 99 Am. St. Rep. 185, 69 N. E. 526; *Knickerbocker Ice Co.* v. *Gardiner Dairy Co.,* 107 Md. 556, 16 L. R. A. (n. s.) 746, 69 Atl. 405; *Angle* v. *Chicago, St. P., M. & O. Ry. Co.,* 151 U. S. 1, 38 L. Ed. 55, 14 Sup. Ct. Rep. 240 [see, also, Rose's U. S. Notes].)

The failure of the purchaser either to tender or make payment on October 4 terminated the contract. Suppose time of performance by the terms of the contract had been of the essence of the contract, bearing in mind the telephonic negotiations between Wheat and Foster to the effect that checks on the Boise City National Bank would be acceptable and the further negotiations at Alder on October 3 and 4, then it is settled law that no default could be charged against the purchaser until it had a reasonable time to comply with the new arrangements. (*Adams & McKee Land Co.* v. *Dugan,* 68 Cal. 226, 228 Pac. 681; *Loftus* v. *Pacific Mut. Life Ins. Co.,* 38 Utah, 532, 114 Pac. 134.) But time was not of the essence of the contract. Section 7549, Revised Codes, reads: "Time is never considered as of the essence of a contract unless by its terms expressly so provided." There was no such provision in the contract. There was no condition or circumstances that required the lambs to be shipped the day in question. True they were loaded on the cars, but one hour would have loaded and reloaded them again. The cars could have been retained at Alder two days without charge, and the only penalty after that would have been demurrage at $2 per day per car. The waiting would have produced some shrinkage, but the down payment would have more than covered this item. The court expressly ruled that time was not of the essence of the contract. In *Curtis* v. *Parham,* 49 Mont. 140, 140 Pac. 511, it is said: "The court should have held, as a matter of law, that time was not of the essence, and categorically instructed the jury accordingly." (See, also, *Farris* v. *Ferguson,* 146 Tenn. 498, 23 A. L. R. 624, 242 S. W. 873.)

The contention that plaintiff is foreclosed from recovery because he did not make tender of compensation for the detriment occasioned by the delay in not having the "guaranteed check" available at Alder on October 4 can have no possible merit. Garrison repeated positively in his testimony that when he started from Alder with the lambs, he no longer recognized the contract. Therefore, the buyer was released from making

further tender. (Sec. 7406, Rev. Codes; *Stanford* v. *Coram,*
26 Mont. 285, 67 Pac. 1005; *Cassidy* v. *Slemons & Booth, supra;*
*Ashley* v. *Rocky Mtn. Bell Tel. Co.,* 25 Mont. 286, 64 Pac. 765.)

MR. JUSTICE MATTHEWS delivered the opinion of the
court.

Charles A. Burden commenced this action as assignee of the
Bicknell Corporation of Boise, Idaho, against the Elling State
Bank, a corporation, for the recovery of damages alleged to
to have been suffered by his assignor by reason of certain wil-
ful and unlawful acts of the defendant, by which, it is alleged,
defendant induced one Walter Garrison to break his contract
to deliver certain lambs to the Bicknell Corporation. The con-
tract is made a part of the complaint, and recites an advance
payment of $1,200, received by Garrison. The complaint then
alleges that Garrison produced his lambs at the place of de-
livery, and that the Bicknell Corporation "then and there and
thereafter stood ready, willing and anxious" to receive the
lambs and make payment therefor, but that the defendant un-
lawfully, wickedly and maliciously, and with the intent to
defraud said corporation of the down payment and the profit
to be derived from a resale of the lambs at the then market
price, alleged to be two cents above the purchase price, induced
Garrison to break his contract, and that Garrison did then
and there refuse, and ever since has refused, to make delivery
of the lambs or to accept payment therefor, to the damage of
plaintiff in the sum of $2,585.34.

To this complaint defendant interposed a general demurrer,
which was overruled, and thereupon filed a general denial.
The cause came on regularly for trial, and at the opening
thereof defendant objected to the introduction of any testimony
on the ground that the complaint did not state facts sufficient
to constitute a cause of action, which objection was overruled.
At the close of plaintiff's case defendant moved for judgment
of nonsuit on the ground of the insufficiency of the evidence,
which motion was overruled, and at the close of all the evidence

defendant moved the court to direct the jury to return a verdict for defendant, which motion was denied. The jury returned a verdict for plaintiff for damages and interest, totaling $1,742.20, and judgment was duly rendered and entered thereon. Thereafter defendant moved for a new trial, which motion was denied. The defendant has appealed from the judgment.

1. Assignments of error numbered 1 and 2, predicated upon [1] the court's action in overruling defendant's demurrer and its objection to the introduction of any evidence, challenge the sufficiency of the complaint. Defendant contends that the action is on the contract, and that the complaint is fatally defective, in that it fails to allege that the Bicknell Corporation performed all conditions precedent by it to be performed, citing certain statutory provisions applicable to pleadings in an action for the breach of a contract.

Counsel is mistaken as to the nature of the action. The parties to a contract cannot impose any liability upon a stranger to the contract under the terms of the contract, but "every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights" (sec. 7573, Rev. Codes 1921), and "every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages." (Sec. 8659, Rev. Codes 1921.) Thus the law, independent of the contract, imposes upon strangers to the contract the duty not to interfere with its performance. The violation of this duty is a tort, the remedy for such interference is by action in tort (3 Elliott on Contracts, sec. 2685), and therefore statutory provisions, respecting the pleading of the breach of a contract, have no application. The elements of a tort are a wrong committed and damage resulting therefrom (Cooley on Torts, 3d ed., p. 3), and sufficient allegation showing the manner in which a defendant has committed an actionable wrong against a plaintiff and the resulting damage therefrom states a cause of action *ex delicto*.

The contract is set out merely for the purpose of showing [2] that a valid contract was in existence at the time of the alleged wrongful action of defendant; it discloses that the plaintiff's assignor was not called upon to perform any act under the contract prior to the time Garrison was required to tender performance. The complaint alleges that Garrison refused performance, and that his action was induced by the unlawful and malicious acts of defendant, and alleges the damages resulting therefrom. It is clear, therefore, that the complaint states a cause of action.

2. Assignments numbered 3 and 4 are based on the overruling of defendant's motion for nonsuit and motion for a directed verdict, and question the sufficiency of the evidence to warrant a submission to the jury.

The general rule is that, where a defendant does not stand [3] on his motion for nonsuit, he assumes the risk of aiding the plaintiff's case, and the evidence will be considered in its entirety. (*Liston* v. *Reynolds,* 69 Mont. 480, 223 Pac. 507; *Emery Con. Min. Co.* v. *Erickson,* 64 Mont. 190, 208 Pac. 935; *Pure Oil Co.* v. *Chicago, M. & St. P. Ry. Co.,* 56 Mont. 266, 185 Pac. 150; *Cain* v. *Gold M. Min. Co.,* 27 Mont. 529, 71 Pac. 1004.) However, the plaintiff here went into the enemy's camp for proof of the facts on which this question turns, and all facts favorable to either the plaintiff or the defendant were brought out on direct and cross-examination, and there is nothing in defendant's case which aids the plaintiff.

The facts, stated most favorably to the plaintiff, are:

In the year 1923 the defendant bank held a mortgage on Garrison's sheep and lambs, with other property, as security for the payment of notes aggregating over $30,000, and had control over the disposition of the property. On August 23 the defendant contracted, in the name of Garrison, for the sale of the lamb crop to the Bicknell Corporation, of Boise, Idaho, for delivery at Alder, Montana, on October 1, 1923, at ten cents per pound, f. o. b. cars, after twelve hours' shrink. The contract acknowledged receipt of $1,200 on the purchase

price, which was credited to Garrison's account and checked out by him and his wife. Garrison made some objection to the contract, and the defendant agreed to credit him with the difference between the contract and market price at time of delivery, and assured the agents of the purchaser that it would see that delivery was made. The contract contained no provision as to time of payment or that time was of the essence thereof. On September 8 the purchaser's agent notified defendant that payment would be by check on the Live Stock National Bank of Chicago, and that the defendant could write that bank and secure a guaranty of payment of the check. On September 13 defendant wrote the bank, and at the same time notified the agent that the purchaser must come to Alder prepared to pay in cash or by guaranteed check, stating: "Most assuredly will not accept any checks on Chicago with the possibility that they will be returned to us ten days after the lambs have been shipped." On October 1 defendant received a reply from the Chicago bank stating that it would guarantee no checks without information as to the amount thereof and number of sheep purchased. Notwithstanding the fact that the agents had full knowledge that the contract called for payment in cash, and were advised two weeks in advance that this provision would only be modified to the extent of accepting a guaranteed check, they appeared at Alder offering only an ordinary check upon the Boise City National Bank.

Although Garrison had ordered cars at Alder for October 1 and had his lambs there for delivery at that time, the cars did not arrive until the morning of October 4, but, by mutual agreement, the contract was modified to the extent of calling for delivery on October 4 and a deduction of two per cent from the gross weight in lieu of the twelve hours' shrink. Defendant's cashier was present at Alder and took part in all negotiations had, and, to some extent, advised Garrison. The lambs were weighed, and the deduction made on the evening of October 3, and the agent of the purchaser computed the exact amount due Garrison under the contract, and by 9

o'clock on the morning of the 4th, Garrison had all his lambs on board cars and tendered delivery thereof. They were billed by the railway company to the purchaser. Nothing was left under the contract with the exception of payment by the purchaser.

On being notified that the purchaser intended paying by check on the Boise bank, defendant's cashier wired that bank for advice as to whether it would guarantee checks on the Bicknell Corporation "not to exceed $25,000." To this message the Boise bank replied that it would not guarantee payment, but ventured the opinion that the checks would be good. Garrison and other shippers, with Wheat, the cashier of defendant bank, then demanded that arrangements be made at once for checks on a Montana bank which would guarantee the payment thereof. The purchaser's agents then wired Mr. Bicknell at Boise to make such an arrangement, and a reply was received to the effect that the money was being forwarded to the National Bank of Montana, at Helena. Wheat then called this bank and was informed that it would not guarantee payment of the checks and had notified the Boise bank that, as neither the purchaser nor the sellers did business with the bank, it did not care to accept a remittance for the payment of these checks, and had advised the Boise bank to remit through the Federal Reserve Bank at Helena. The Boise bank at first refused to do this, but on October 5 remitted through the Federal Reserve Bank at Salt Lake, and the money finally, on that day, came into the hands of the Helena bank, and on the same day the Boise City Bank wired defendant that it would guarantee payment of draft signed by the purchaser's agent.

However, the altercation between the shippers, Wheat, the cashier, and the agents of the purchaser waxed somewhat heated during the afternoon of the 4th, and in the course thereof Wheat told the agents that "they" did not propose to accept checks which might be returned protested after the lambs were shipped and sold. Foster, the agent in Montana, stated that Bicknell Corporation were not giving "bum checks,"

76 Mont.—3

whereupon Wheat replied that but a week or so before two shippers in the county had had their checks returned protested ten days after delivery of the sheep, to which Foster replied, "I know nothing about that." This conversation took place in the presence of Garrison. The shippers charged Wheat with failure to make proper arrangements, and he told them that he was "through with the whole damned outfit; you can do as you please." The lambs had then been loaded for eight or nine hours.

At about 5 o'clock P. M. of the 4th, Garrison made a final demand upon the agent of the purchaser for immediate payment in cash or by check, guaranteed by the bank upon which it was drawn, and told him that, if payment was not made immediately, he (Garrison) would not deliver his lambs but would proceed to ship them himself, to which the agent replied, "I haven't got it." Thereupon Garrison requested Wheat to secure legal advice as to his position and wire him en route. All the shippers had their lambs rebilled in the name of the defendant, and Garrison started with them for Chicago. The purchaser sent a man with him to accept delivery later if a satisfactory arrangement was made. Garrison did not agree that a subsequent payment would induce him to deliver his lambs; he testified that, up to his final demand at 5 P. M., he intended to deliver them to the purchaser, but from that time on he did not intend to so deliver them.

Satisfactory arrangements having been made on October 5, all of the shippers, with the exception of Garrison, who was, of course, not present, accepted payment, and the agent of the purchaser requested Wheat to wire Garrison of such fact. Wheat wired Garrison at Glendive to release all shipments but his own, and stated: "You can take the money or go on with shipment and sell your own; * * * we are advised he cannot recover from you * * * wire if you wish to settle or go on thru." Garrison elected to proceed, and sold his lambs through Wood Bros. of Chicago, who remitted to

defendant, and the total amount was credited on Garrison's indebtedness.

The only question for our determination is: Did the failure [4, 5] of the purchaser to make payment on October 4, under the circumstances related, terminate the contract and justify the action taken by Garrison on the evening of that day? If this question is answered in the affirmative, there was no contract in existence at the time of the alleged unlawful acts of the defendant, and its interference, if any, was immaterial.

Counsel for plaintiff contends that as time was not of the essence of the contract when the shipper refused to accept a check as payment, the purchaser had a reasonable time within which to obtain cash. In support of this contention he cites *Curtis* v. *Parham,* 49 Mont. 140, 140 Pac. 511, and *Farris* v. *Ferguson,* 146 Tenn. 498, 23 A. L. R. 624, 242 S. W. 873.

The opinion in *Curtis* v. *Parham* merely declares the rule that, where time is not of the essence of the contract, the seller has a reasonable time in which to tender delivery under the contract. The Tennessee case held that, where the contracting parties were neighbors and had had other dealings, and the purchaser had every reason to believe that checks would be acceptable and the seller admitted that he knew that an indorsed check tendered was good, after the unexpected demand for cash at the time of delivery, the purchaser should have been given a reasonable time in which to get the cash. Several cases are cited in the Tennessee opinion to the effect that, where the particular circumstances of the case show that the seller is merely attempting to avoid the contract on the technical ground that the contract calls for payment in cash, after having led the purchaser to believe that a check would be acceptable, the purchaser should have a reasonable time in which to procure the cash. The rule thus announced is in the nature of an exception to the general rule, hereinafter announced, and does not apply to the case before us, wherein it clearly appears that the purchaser was fully advised that payment would be required either in cash or by check guaranteed by

the bank on which it was drawn, if, under our statutes, it has any application whatever.

It is true that our statutes provide that "time is never considered as of the essence of a contract, unless by its terms expressly so provided" (sec. 7549, Rev. Codes 1921), and, "if no time is specified for the performance of an act required to be performed a reasonable time is allowed," but, "if the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained." (Sec. 7548.)

Where one buys personal property at an agreed price, by implication of law he agrees to pay the price, and, if no time of payment is agreed upon, the law fixes the time of delivery as the time of payment. (*Gilfallan* v. *Gilfallan,* 168 Cal. 23, Ann. Cas. 1915D, 784, 141 Pac. 623); in other words, the acts of delivery and payment are to be performed concurrently, and, as the act of payment "is in its nature capable of being done instantly," the rule as to reasonable time does not apply. Under such circumstances as are here disclosed, the purchaser must pay on delivery, and on his failure to do so the seller is justified in declaring the contract breached and thereafter refuse delivery. (*Meeker* v. *Johnson,* 5 Wash. 718, 32 Pac. 772, 34 Pac. 148; *Loewi* v. *Long,* 76 Wash. 480, 136 Pac. 673; *City of Pendleton* v. *Jeffery & Bufton,* 95 Or. 447, 188 Pac. 176; *Romer* v. *Wehner,* 61 Cal. App. 411, 214 Pac. 993; *McIllmoil* v. *Frawley Motor Co.,* 190 Cal. 546, 213 Pac. 971; *Hart-Wood Lumber Co.* v. *Bonaly,* 192 Cal. 180, 219 Pac. 432.)

When the agents of the Bicknell Corporation went to Alder to receive the lambs without first preparing to meet the known requirements of the shippers, they did so at their peril, and cannot be heard to complain that the action taken against the purchaser was harsh. Garrison fully performed his contract before 9 o'clock on the morning of the 4th of October; he tentatively delivered his lambs f. o. b. cars at Alder, billed in the name of the purchaser. All that was left to be done

was the "payment of money only," which act the purchaser was required by law to perform "immediately." As the purchaser did not comply with the terms of the contract as fixed by law, it breached its contract at that time, and the seller was entitled to declare a forfeiture immediately. That he did not do so was merely a matter of grace, and does not aid the plaintiff herein. When, after a delay of from eight to nine hours, Garrison made his final demand and tender of delivery on payment in the manner prescribed, and the agent of the purchaser stated that such payment could not be made, Garrison was fully justified in declaring the contract breached and in seeking elsewhere a market for his lambs. Having breached its contract, the subsequent offer of payment by the purchaser was without effect.

It follows that, at the time it was alleged the defendant induced Garrison to break his contract, no contractual relation existed between Garrison and the plaintiff's assignor, and the acts of interference by the defendant, if any, were immaterial.

For the reasons stated, it is apparent that the trial court committed error in denying defendant's motion to instruct the jury to return a verdict in its favor.

The judgment is reversed and the cause remanded, with direction to enter judgment in favor of the defendant.

*Remanded with directions.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK and HONORABLE A. J. HORSKY, District Judge, sitting in place of MR. CHIEF JUSTICE CALLAWAY, who deemed himself disqualified, concur.

Rehearing denied April 22, 1926.